## WOLF v. EDMUNSON et al.

(Circuit Court of Appeals, Ninth Circuit. March 5, 1917.)

No. 2848.

1. WITNESSES ☞268(2)—CROSS-EXAMINATION—SCOPE.

In an action to recover advances made under a contract for the sale of hops to be grown, where defendants counterclaimed, setting up plaintiff's breach of contract in failing to receive the hops when tendered, a witness for plaintiff, who claimed that the hops were not up to the standard prescribed in the contract, having testified that the color of the hops indicated an overripe and underripe condition, might properly be cross-questioned as to the general average condition of the crop, to show that he was testifying to a fact he could not possibly know.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 932.]

2. SALES ☞397—ACTIONS—EVIDENCE.

In such case, defendants, who contended that their hop crop was improperly rejected, might testify that the grading of hops by inspectors varied.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1136.]

3. APPEAL AND ERROR ☞201(2), 259—PRESENTATION OF GROUNDS OF REVIEW IN COURT BELOW—NECESSITY.

Where there was no objection to a statement by the court in admitting evidence, and no exception was reserved at the time, the matter cannot be reviewed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1251, 1498–1502; Trial, Cent. Dig. § 84.]

4. APPEAL AND ERROR ☞206(2)—REVIEW—PRESENTATION OF GROUNDS IN COURT BELOW.

In an action involving a contract by plaintiff to purchase defendants' hop crop, where defendant, who had established his competency as to the quality of his crop, in response to a question whether he was able to de-

liver the amount, of hops specified in the contract, testified, that he considered he had more than enough hops of the required quality to satisfy the contract, and no objection was made to the answer on the ground that it was not responsive to the question, and no motion was made to strike, it cannot thereafter be attacked on the ground that the answer was nothing more than an estimate.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1273, 1286–1289.]

5. EVIDENCE ☞525—OPINION EVIDENCE—CHEMICAL ANALYSIS.

In an action for advances made by plaintiff under a contract to purchase defendants' hops, plaintiff contended that the hops raised by defendant were not of the standard prescribed in the contract, but that defendant refused to accept a reduction in price according to the contract, and disposed of the hops elsewhere. Defendant asserted that his hops were of the best quality, and that plaintiff rejected them because the market price of hops had decreased. Witnesses for plaintiff testified that the best hops were bright and flaky, of good, even quality, and that they contained much lupulin, which is the main qualification of good hops. A witness called by defendant testified as to the chemical analysis of hops to determine the amount of lupulin or pollen. *Held* that, in view of an instruction that the question for the jury was the merchantable value of hops, testimony as to the chemical analysis of the hops and the amount of the lupulin found was admissible, although hop buyers determined that fact by other means.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2333.]

6. APPEAL AND ERROR ☞110—REVIEW—QUESTIONS PRESENTED.

The denial of a new trial will not be reviewed by the Circuit Court of Appeals.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 740–748.]

In Error to the District Court of the United States for the District of Oregon; C. E. Wolverton, Judge.

Action by Max Wolf against J. M. Edmunson and another who counterclaimed. Judgment for defendants, and plaintiff brings error. Affirmed.

Action to recover $3,001, advanced by Klaber, Wolf & Netter, the predecessors in interest of the plaintiff in error, under a contract for the sale to that firm of 30,000 pounds of the 1912 crop of hops to be grown upon the land of the defendant in error M. J. Edmunson. Plaintiff in error alleged breach of contract on the part of the defendants in error in failing to deliver hops of the quantity and quality described in the contract. The answer of the defendants in error alleged breach of the contract by the predecessors of plaintiff in error in failing to accept hops tendered in accordance with the terms of the contract, and set up, by way of counterclaim, that defendants in error were damaged to the extent of $3,900 through the default of the predecessors of plaintiff in error. Judgment for defendants in error for $400. The parties will be designated hereafter as plaintiff and defendant, as in the court below.

On May 29, 1912, the defendants entered into a contract with plaintiff's firm whereby they agreed to sell and the firm to purchase at 25 cents per pound 30,000 pounds of their 1912 crop of hops grown upon the Edmunson farm, near Goshen, Or. The hops were to be of "first quality, i. e., of sound condition, good and even color, fully matured, but not overripe, flaky, cleanly picked, properly dried and cured, and free from sweepings and other foreign matter, and not affected by spraying or vermin damage." It was agreed that the buyer should have the privilege of inspecting all of the hops, either on the farm of the seller or at any place the hops might be stored or located,

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and selecting therefrom the quantity sold under this contract. It was also agreed that "if in the judgment of the said buyer the quality of all or any portion of the hops tendered under this contract by said seller should be inferior, from any cause whatever, to the quality of hops above specifically called for, it shall be the duty of the seller to tender to said buyer the said hops raised, and the said buyer may have the right of accepting the entire quantity contracted for, or any part less than the entire quantity contracted for, at a reduction in price, which reduction shall be equal to the difference between the market value of such hops tendered under this contract by said seller and the market value of such hops at the time of the execution of this contract as are herein specifically called for to be delivered." It was further agreed that "if, from any cause whatever, the said seller should deliver or tender for delivery a quantity of hops less than the quantity above contracted for, it shall be the duty of the seller to tender to said buyer the said hops raised, and the said buyer may have the right of accepting the quantity tendered, and shall be entitled to damages for the amount short delivered, which damage shall be equal to the difference in market value at the time of delivery of this contract between the quantity and quality above called for and the quantity and quality actually tendered or delivered." The seller agreed to deliver to buyer all hops accepted under this agreement, free of all liens and incumbrances, f. o. b. cars or warehouse at Goshen, Or., as the buyer might elect. In accordance with the terms of the contract, plaintiff's firm, on May 1, 1912, advanced to defendants the sum of $1,200, and on August 31, 1912, the sum of $1,800, as part payment for the hops.

It was alleged in plaintiff's complaint, filed in the United States District Court for the District of Oregon on June 19, 1915, that during the month of October, 1912, defendants furnished samples from the hops grown on the premises during the year 1912, and, finding them of inferior quality and not according to the specifications of the contract, plaintiff's firm inspected the hops fully and completely, and found them slack-dried, bad and uneven in color, of unsound condition, not fully matured, not cleanly picked, not properly dried or cured, and affected by vermin damage, whereupon the firm rejected the said hops as first quality hops as defined by the contract. It was further alleged that defendants refused to tender the hops to plaintiff's firm at any reduction in price, and refused to act any further under the contract, or comply with any of the terms or provisions thereof, and, without the knowledge or consent of plaintiff's firm, proceeded to and did sell the hops to other parties in violation of the contract. It was further alleged that since selling the hops to other parties defendants have refused to repay to plaintiff the sums advanced under the contract, aggregating $3,001, and this action is brought for the purpose of recovering the advances so made.

Defendants answered, alleging a tender by them of sufficient hops to fill the contract, and denying that they were not first quality as specified therein. It was further denied that defendants sold these hops to other parties at any time before March, 1913, but alleged they were stored in the warehouse until that time, in readiness to fill plaintiff's order under the contract. It was alleged that plaintiff's firm abandoned the contract upon the sole ground that the market price of hops was much lower than the contract price. Further answering, and by way of counterclaim, defendants alleged they were damaged to the extent of $3,900 by reason of the wrongful refusal of plaintiff's firm to accept the hops tendered by defendants, and prayed that judgment be entered in their favor for the excess of $900 above the amount of the advances received from the plaintiff's firm, and for their costs.

Plaintiff replied, denying the various allegations of the answer, with the exception that it was admitted the market price of hops in October, 1912, was lower than the contract price.

The case was tried in the District Court before a jury, who returned a verdict in favor of the defendants in the sum of $400, and judgment was entered upon such verdict for $400 and costs. A motion for a new trial was then made by plaintiff, upon the ground that the verdict was against the evidence, which motion was denied. Plaintiff alleges error in the rulings of

the lower court, admitting certain evidence on behalf of the defendants, and denying plaintiff's motion for a new trial.

J. M. Williams and Louis E. Bean, both of Eugene, Or., for plaintiff in error.

Manning, Slater & Leonard, of Portland, Or., for defendants in error.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). [1] 1. It is assigned as error that the court permitted Ross H. Wood, called as a witness on behalf of the plaintiff, to answer the following question on cross-examination:

"Q. What you men mean to get at is the general average of the crop?"

The witness answered:

"A. Well, yes. There was some of them green in each sample, and some of them were ripe—mixed—as you were talking a while ago about where those were dumped off the kiln floor."

This witness had testified that he had bought these hops and received them, arriving at the valuation of the hops on the samples that he had of the crop out of the different bales. The witness was referring to his purchase of the hops in March, 1913, for H. L. Hart, after they had been rejected by Klaber, Wolf & Netter (plaintiff's predecessors in interest) in the previous October as a delivery under the terms of the contract. The objection is that the question and answer related to the color of the hops, and it is said that no one could possibly tell, describe, or even guess what the average color of this crop of hops was.

This witness was testifying for the plaintiff as to the overripe and underripe condition of the hops as indicated by their color, and if it was true, as the plaintiff now contends, that the witness could not testify as to the average color of the crop, then manifestly it was proper for the defendant to obtain from the witness on cross-examination the admission that he was testifying to a fact he could not possibly know. It was plainly proper cross-examination.

[2] 2. It is next assigned as error that the court permitted the defendant Edmunson to answer the following question on his direct examination:

"Q. Now, what is your experience with hop inspectors, as to their being uniform in their judgment as to the quality of hops?"

To this question the witness answered:

"A. I find that they vary considerably. One will call a hop prime, and the other medium, etc. They will vary as much as one grade, and some vary two grades."

This witness had testified that, at the time of this transaction, he had been in the hop business for 22 years, had raised hops for a long time, and for the last 10 or 15 years had been mixed up with the dealers in one way or another, sampling and inspecting hops. He was testifying

to a fact within his experience as a hop producer and dealer. The evidence was plainly competent, relevant, and material.

[3] The objection now urged is that the court, in overruling the objection, said:

"I think that is an inquiry about the quality in effect of the hops."

The court was right. The inquiry was for the purpose of determining the value of the inspectors' testimony as to the quality of the hops, which was the issue to be determined. However, as there was no objection to this statement by the court when it was made, and no exception taken to it at the time, it must be treated as wholly without merit.

[4] 3. It is next assigned as error that the court permitted the defendant Edmunson to answer the following question:

"Q. Now, what do you say as to whether, at the time that Mr. Hinkle inspected these hops on the 31st of October, that you had 30,000 pounds of hops there of the quality described in that contract?"

The objection to this question was that it was incompetent, irrelevant, and immaterial, and as calling for a conclusion of the witness. It was calling for the conclusion of the witness only in the sense that he was asked to state the quantity of hops he had on hand; and as to the quality, he had already furnished evidence of his qualification to testify as to the quality of the hops. The witness answered this question:

"A. I *considered* that I had more than enough hops, of the quality that would be sufficient, that would go on the contract. There was perhaps 50 bails, or 60, between 50 and 60 bales, hops extra, besides enough. I had over 40,000 pounds, according to my recollection, in the whole crop."

The objection now made to the answer is that it was nothing more than an estimate, and not a positive statement; that the witness said he "considered" that he had more than enough, etc. (probably using a provincialism); but the question called for the statement of a fact. If it was not responsive to the question, the plaintiff should have insisted that the witness make it responsive, or that the court strike it out. As no objection was made to the answer, and no exception was taken to it, and no effort made to have it made responsive or struck out, we must treat this assignment as without merit.

[5] 4. The next five assignments of error relate to the testimony of Bert Pilkington, a witness called on behalf of the defendant. This witness testified that he resided at Corvallis, Or., and was employed in the State Agricultural College at that place; that his occupation was that of a chemist; that one of the particular features of his work was a revision of the methods for the chemical examination of hops, the object being to obtain a process of chemical analysis whereby hops would be given examination according to their worth. This process had for its purpose the determination of the chemical constituents of hops with respect to their brewing qualities. Among these constituent elements were certain resins and lupulin, or pollen. The objection urged by the plaintiff against this testimony was that it was an attempt to introduce a standard for inspection different from that used by the hop men. The method of the hop men appears to be, from the evi-

dence, the "rubbing nose method," and consists in the use of the senses of smell, touch, and sight. Netter v. Edmunson, 71 Or. 604, 613, 143 Pac. 636.

The testimony in this case concerning the chemical elements of hops came first from the witnesses for the plaintiff. The witness H. A. Hinkle, called by the plaintiff, testified that he had been in the hop business about 21 years, and had been inspecting and grading hops about 18 years. He was employed by the plaintiff in October, 1912, to inspect the hops in this case for him; that the grades of hops were choice, prime, and medium. On cross-examination, he testified that a choice hop was bright and flaky, free from mold, good, even color, fully matured, not damaged by vermin or anything like that, full of lupulin, and of good flavor; that a prime hop was a grade lower than a choice hop; that a prime hop need not be so fat, nor quite so bright, as the choice hop. When asked what he meant by "not quite so fat," he answered, "Not quite so much lupulin in it." He was then asked, "What is the lupulin in a hop?" He answered, "It is the pollen on the inside. It is the powder substance of a hop; the main qualifications of a hop." This witness admitted that he told Edmunson that, if these hops would come up to prime, he would take them.

Hal V. Bolam, a witness for the plaintiff, had been in the hop business for 26 years, and a hop buyer and inspector for 20 years. He testified that he examined four samples of hops from the Edmunson yard in 1912; that the grades of hops were choice, prime, and medium; that the Edmunson hops were immature, lacking in good lupulin, flavor was poor, either from faulty curing or other defect, and partly, probably, from the immature nature of the hops. On cross-examination, he said that the hops did not have sufficient lupulin to make them a mature hop; that "a hop may not be large, but it must contain lupulin. The lupulin is the pollen, which you find in the center of the hop cone. There is a powder or pollen in the center of the cone of the hop."

James Hayes, a witness for the plaintiff, had been a hop grower and buyer for about 15 years. In 1912 he was the buyer for Klaber, Wolf & Netter. He inspected the Edmunson hops in October, 1912, with the witness Hinkle. He testified that the hops were of poor quality. Upon cross-examination, he was asked what constituted "the material part of a hop for brewing purposes." He answered, "The lupulin, I suppose." He testified further that hops sell according to their color and appearance, etc.; that they should be rich in lupulin; if they do not have lupulin, he supposed they would be worthless; he did not think it would be possible for a hop to have good color, etc., unless it had lupulin in it. He did not think, however, that the lupulin made the color.

The witness Ross H. Wood, who was called by the plaintiff, testified that some of the hops were immature. When asked how he arrived at that judgment, he said:

"Because they were of green color and thin. There was not very much lupulin in them—in other words, much pollen."

All this testimony was given without objection, and was before the jury when the witness Pilkington was called by the defendant. When the objection was made to the testimony of Pilkington upon the chemical elements of the hops, the court said:

"There has been testimony here, coming from the witnesses produced by the plaintiff, touching the amount of resin, or pollen, as it has been described, or lupulin, that is contained in these hops, some saying that it had more and some less, and that seems to be the prime quality of the hop. If this witness is competent to testify concerning the quantity of that lupulin in the hops, or the specimens that he examined, I think that would be proper to go to this jury."

We think this evidence was admissible on the part of the defense. The contract called for a first-class hop, and specified as one of the elements that the hop should be "fully matured." The evidence on the part of the plaintiff tended to show that the defendants' hops were immature, lacking good lupulin, and that lupulin was the main qualification of a good hop. Manifestly the defendants were then entitled to show, if they could, that the Edmunson hops contained a sufficient percentage of lupulin to make them first-class hops; and this was the purpose of the Pilkington testimony—that is to say, to show the percentage of lupulin in the hops by chemical analysis. But the witness stated that he did not know what a choice hop was, measured by the commercial rule. The court was careful to advise the jury in its instructions that the chemical value of the hop was not a controlling test. These instructions carefully defined the questions presented by the pleadings; the terms of the contract as entered into between the parties; the elements of quality and quantity of the hops constituting the subject of the contract; referred to the testimony concerning the same, and the action of the parties in complying or attempting to comply with the contract. In these instructions there was a paragraph which, we think, correctly and clearly submitted to the jury the real question of fact for their determination, and, at the same time, they practically disposed of all the objections to the testimony which we find in this record. The paragraph related to the merchantable quality of the hops according to the custom of the hop trade. The court said:

"I will state further, in this connection, gentlemen of the jury, that these hops were raised for the market, and the contract was made with the market value in view, and, in considering the quality of these hops, you will consider them as merchantable, as the parties themselves desired that the hops should be sold in the market and should be so treated, so that the merchantable value is the thing you are to consider, and not, strictly speaking, the real inherent or chemical value."

To these instructions no objections were taken; indeed, they submitted the case to the jury with such clearness, fairness, and precision that objections, so far as we can see, were out of the question.

[6] 5. The refusal of the court to grant a new trial presents no question for review.

The judgment of the District Court is affirmed.