WAYNE et al. v. VENABLE et al.

(Circuit Court of Appeals, Eighth Circuit. July 8, 1919.)

No. 5206.

1. APPEAL AND ERROR ⬥231(3)—REVIEW—RULINGS AS TO EVIDENCE—SUFFICIENCY OF OBJECTION.

A mere objection to the admission of evidence offered, without the statement of any grounds or reason to advise the court of the particular objection relied upon, does not raise any issue of law reviewable by an appellate court.

2. COURTS ⬥282(1)—ELECTIONS ⬥57—INTERFERENCE WITH VOTERS—RIGHT OF ACTION.

An action for damages in a proper federal court lies by a qualified voter for his wrongful deprivation of his constitutional right to vote for a member of Congress by a defendant or by an effective conspiracy of several defendants.

3. ELECTIONS ⬥58—DEPRIVATION OF RIGHT TO VOTE—ACTION FOR DAMAGES.

In the eyes of the law the right of a qualified voter to vote for a member of Congress at a general election is so valuable that damages are presumed from the wrongful deprivation of it without evidence of actual loss of money, property, or any other valuable thing, and the amount of damages is a question peculiarly appropriate for the determination of the jury.

4. ELECTIONS ⬥58—DEPRIVATION OF RIGHT TO VOTE—CONSPIRACY—ACTION FOR DAMAGES.

Evidence *held* to warrant submission to the jury of the question whether plaintiffs were deprived of their right to vote at a general election for a United States Senator and member of Congress by an unlawful conspiracy between defendants.

5. TRIAL ⬥260(1)—INSTRUCTIONS—REQUESTS TO CHARGE.

Where a rule of law has been fairly stated to the jury in the general charge, it is not error to refuse to repeat it in the words of a request of counsel.

In Error to the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Separate actions at law by J. A. Venable and by J. V. Boyd against Harry A. Wayne and others, consolidated for trial. Judgment for plaintiff in each case, and defendants bring error. Affirmed.

E. L. McHaney, of Little Rock, Ark. (R. L. Rogers and G. W. Murphy, both of Little Rock, Ark., on the brief), for plaintiffs in error.

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Powell Clayton, of Little Rock, Ark. (U. S. Bratton, of Little Rock, Ark., on the brief), for defendants in error.

Before SANBORN and CARLAND, Circuit Judges, and MUNGER, District Judge.

SANBORN, Circuit Judge. Each of the defendants in error, J. A. Venable and J. V. Boyd, brought his separate action in the court below on March 23, 1917, against Harry A. Wayne, Walter Alexander, and others for $5,000 damages and $10,000 punitive damages, because, as each of the plaintiffs below alleged, Wayne and Alexander conspired and combined with each other and others to prevent them who were qualified electors in Eagle Township, Ark., from casting their votes therein for presidential electors, United States Senator, and a member of Congress at the general election in that township on November 7, 1916, when and where presidential electors, a United States Senator, and a member of Congress were to be voted for and elected, whereby each of the plaintiffs was deprived of the privilege of voting for any candidate for presidential electors, or United States Senator, or for Congressman, at that election. By order of the court the two actions were consolidated and tried together, and they resulted in a verdict in favor of each of the plaintiffs against Wayne and Alexander for $2,000. Judgments accordingly were rendered, and the defendants below here complain of six alleged errors in the trial.

[1] The first is that the court overruled the objection of counsel for the defendants to the testimony of Mr. Leach, a witness for the plaintiffs below, to a conversation between him and Dr. J. R. Wayne, one of the alleged conspirators. The objection, however consisted of the two words, "We object." The second complaint is identical with the first, and relates to the same conversation, but in that instance counsel did not even use the words, "We object." The objection stated no ground or reason for it. It failed to direct the attention of the court below to the particular feature upon which objecting counsel relied, and it raised no issue of law, the decision of which was reviewable in an appellate court. Davidson S. S. Co. v. United States, 142 Fed. 315, 316, 73 C. C. A. 425; Eli Mining & Land Co. v. Carleton, 108 Fed. 24, 47 C. C. A. 166.

The third complaint is that the court erred in stating in the presence and hearing of the jury after it had overruled defendants' objection to the question propounded by plaintiffs to their witness Lee calling for the official list of the electors of Eagle township of 1916 as follows: "It may be introduced for the purpose of showing that for the purpose of carrying on the original conspiracy they failed to provide the means of voting for a sufficient number, as required by law." In this remark the court referred to the list of taxes paid in 1916 prior to the first Monday in July, which plaintiffs' counsel offered to introduce to show that the number of booths required by law, a booth for each 100 electors, had not been provided. To this remark of the court Mr. Rogers, one of the counsel for the defendants, said, "To which ruling of the court the defendants by their attorneys

duly excepted at the time." He further said, "According to the number of poll taxes paid it would be inadmissible." Thereupon the court immediately reversed its ruling and said, referring to this list of taxes, "It is inadmissible." The position that there was fatal error in the remark here challenged is untenable: (1) Because no objection or exception to any part of the remark, except the ruling admitting the list, was made or taken, and that ruling was immediately reversed, and the list was excluded from the jury before the number of poll taxes it disclosed as paid came to their knowledge; and (2) because no motion or request was made to withdraw or strike out the remark; and (3) because in view of the immediate reversal of the ruling it is clear that the effect of the remark was so completely nullified that it did not and could not have been prejudicial to the defendants. Wolf v. Edmunson, 240 Fed. 53, 57, 153 C. C. A. 89.

The fourth complaint is that the court refused to instruct the jury to return a verdict for the defendants at the close of the evidence. Upon nearly every material issue at the trial the evidence was conflicting. This complaint therefore does not present the question of the weight of the evidence, for it was the exclusive province of the jury to determine that issue, and they have decided it against the defendants. The only question within the jurisdiction of the court is whether or not there was any substantial evidence to sustain their verdict, and in considering that question every material issue of fact upon which there was a substantial conflict in the evidence must be treated as decided in favor of the plaintiffs.

[2] The right of qualified electors to vote for a member of Congress at a general state election, which is also an election at which a Congressman is to be lawfully voted for and elected, is a right "fundamentally based upon the Constitution [of the United States], which created the office of member of Congress, and declared it should be elective, and pointed to the means of ascertaining who should be electors." Ex parte Yarbrough, 110 U. S. 655, 664, 665, 4 Sup. Ct. 158, 28 L. Ed. 274.

An action for damages in the proper federal court lies by a qualified elector for his wrongful deprivation of this right by a defendant or by an effective conspiracy of several defendants who deprive him thereof. Wiley v. Sinkler, 179 U. S. 58, 62, 63, 64, 21 Sup. Ct. 17, 45 L. Ed. 84; Swafford v. Templeton, 185 U. S. 487, 491, 492, 22 Sup. Ct. 783, 46 L. Ed. 1005.

[3] In the eyes of the law this right is so valuable that damages are presumed from the wrongful deprivation of it without evidence of actual loss of money, property, or any other valuable thing, and the amount of the damages is a question peculiarly appropriate for the determination of the jury, because each member of the jury has personal knowledge of the value of the right. Scott v. Donald, 165 U. S. 89, 17 Sup. Ct. 265, 41 L. Ed. 632; Wiley v. Sinkler, 179 U. S. 58, 65, 21 Sup. Ct. 17, 45 L. Ed. 84.

[4] The plaintiffs brought this action against Dr. J. R. Wayne, Walter Alexander, Harry A. Wayne, Wright W. Wilder, James T.

Ritchie, T. L. Hughes, Zeb E. Perry, O. B. Clark, and Fred Lynn. They alleged that these defendants conspired to prevent each of the plaintiffs, who were qualified electors in Eagle township, from voting at the general election in that township in the state of Arkansas on November 7, 1916, and that by means of that conspiracy they did prevent each of them from voting at that election at which a United States Senator and a member of Congress were to be lawfully voted for and elected. The record in this case convinces that while there was a conflict in the evidence regarding nearly all the material issues of fact, there was at the close of the evidence substantial evidence of these facts. The plaintiffs were qualified electors of Eagle township at the election therein on November 7, 1916, at which election a United States Senator and a member of Congress were lawfully to be voted for and elected. At this election in Eagle township, Harry A. Wayne, Walter Alexander, and T. L. Hughes were the judges of the election. After they met at the polling place on election day they appointed James T. Ritchie a special deputy sheriff to assist in conducting the election, and instructed him how he should admit into a schoolroom, where the voting was conducted, those desiring to vote, and that he should admit them one at a time. Elbert L. Swartz, J. R. Alexander, a relative of Walter Alexander, the judge, and J. R. Venable, the son of J. A. Venable, the plaintiff, were candidates for the office of justice of the peace, and Wright W. Wilder was a candidate for the office of constable. Mr. Swartz, Mr. Alexander, and Mr. Wilder had the same supporters. Before the election Mr. Bratton had been employed by Mr. Venable to attend the election in Eagle township to take the affidavits of those who voted for Mr. Venable. Dr. J. R. Wayne met him and said, "Bratton, I just want to tell you, you had better stay away from Wampoo (the place where the election was held); it is very likely that trouble will occur, and you will endanger your life if you go down." When Mr. Bratton answered that he had been employed to go to the election, and that he would go, Dr. Wayne replied that if his fee was worth more than the risk of his head, to go ahead, and that they objected to his going there and having anything to do with their affairs. Dr. Wayne attended the election from 10 o'clock in the morning until after the polls closed, and he and Mr. Swartz frequently during the day were in the polling room and out of it when the voting was going on, although the statutes of Arkansas provide that, "Except as the electors are admitted and pass in, one at a time, to vote, no person shall, under any pretext whatever, be permitted in the polling room, from the opening of the polls until the completion of the count of the ballots and certification of the returns, except the sheriff or deputy, and the judges and clerks of the election," except under circumstances not disclosed in this record. Mr. Leach, a qualified voter in Eagle township, had a store 50 or 75 feet from the voting place. He testified that he tried to vote half a dozen times, but Mr. Ritchie was in charge of the door and would not let him in, although automobiles were coming in and the people from them voted in preference to those theretofore at the polling place waiting for an

opportunity to vote to such an extent that he tackled Dr. Wayne about it; that Dr. Wayne told him that he had the situation in his hands; that thereupon he and Dr. Wayne had an understanding that Mr. Leach and Mr. Swartz should be elected justices of the peace; that they would have Alexander withdraw; that he (Leach) should get his men up, and he (Dr. Wayne) would see that they got in to vote; that he (Dr. Wayne) would tell Ritchie to let Leach in; that he then went back to the polling place and had no trouble in voting.

The Statutes of Arkansas (Kirby's Dig. § 2812) provided: "The polls shall be opened at eight o'clock a. m. and shall remain continuously opened until half-past six o'clock p. m." The polls were not opened for voting until about 9:30 a. m., and a recess was taken for lunch. There were about 220 votes usually cast at an election in Eagle township generally, but at this election only about 105 were received. When the polls were opened, and for an hour or more before that time, there were about 100 men waiting for the polls to open so that they could vote. The electors were not admitted in the order of their arrival or of their proximity to the polling place, but Mr. Ritchie, by calling or beckoning, selected those who should vote and admitted them, while at the same time he repeatedly refused to admit those nearer the entrance who had been waiting longer. Automobile loads of voters came to the polls from Mr. Swartz's place and Mr. Wilder's place, while many voters who had been waiting to vote and had repeatedly been refused admission to the polling room by Mr. Ritchie were still waiting to vote. Mr. Swartz came out of the polling room to these men as they came up in the automobiles, led them up to the door, and they were admitted by Ritchie and permitted to vote one after the other until they had all voted, before any other voter who had been refused admission was permitted to enter the polling place. The voting was very slow—from 5 to 20 minutes were used to get in a single vote, only one voter was admitted to the polling place at a time, and no other one was admitted until he came out, save in exceptional instances until about 15 minutes before the polls closed, when announcement was made that the polls would close in 15 minutes, the door of the polling room was opened, and during that 15 minutes voters were admitted more rapidly, but it was too late for all those present to vote, and 40 or 50 of them were still there trying to get in and vote when the polls closed, while many others who had repeatedly tried to vote and had been turned back during the day, had become satisfied that they would not be permitted to vote, and had gone away and were in that way deprived of their rights to vote. Each of the plaintiffs waited long, repeatedly advanced towards the door and tried to vote, and was repeatedly prevented by Ritchie from so doing, and in this way each of the plaintiffs was deprived of his vote and of his right to vote for any of the candidates at this election.

The existence of the material facts which have been stated, was denied by the testimony of witnesses for the defendants. Whether they existed or not was, as has been already said, a question for the jury, but so many witnesses testified to their existence and so many

circumstances pointed to their existence that this court cannot hold that there was no substantial evidence to prove it, or that there was no substantial evidence that the defendants Harry A. Wayne and Walter Alexander conspired with Dr. Wayne, Mr. Swartz, and Mr. Ritchie to let the Swartz and Wilder voters exercise their electoral franchise, and by delays, hinderances, and preference to deprive the plaintiffs and other qualified electors of their right to vote at this election. It is incredible that the voting should have been so delayed that only 105 voters out of perhaps 200 voted in eight hours, or that automobile loads of voters led by Swartz 'or Wilder could vote promptly on their arrival, while opposing voters were repeatedly denied the opportunity, and finally deprived of their right to exercise their electoral franchise at that election without the knowledge and assent of these judges of election who chose Mr. Ritchie and had the power to direct him how to discharge his duty impartially and faithfully, and whose duty it was to see to it that every qualified elector had an opportunity to cast his ballot.

The suggestion of counsel for the defendants that the federal court has no jurisdiction over these actions because the plaintiffs produced no direct testimony that they wanted or intended to vote at this election for a candidate for United States Senator, or for a candidate for Congressman, while they proved that they were deeply interested in the election of a candidate for a justice of the peace, is insignificant and negligible. They pleaded in their complaint that they were deprived of their right to vote for a candidate for United States Senator and for a candidate for Congressman by the conspiracy of these defendants which they alleged and the attainment of its object. They proved to the satisfaction of the jury that they were deprived of their right to vote for any one at this election by the conspiracy and the attainment of its object, and as the whole is greater than any of its parts and includes all of them, they proved that they were deprived of their rights to vote for a candidate for United States Senator and for a candidate for Congressman, and that constitutes proof of a cause of action over which the federal court has jurisdiction.

[5] The fifth complaint is that the court refused, after it had delivered its charge to the jury, to modify that charge so as to give the jury certain information regarding the law of conspiracy embodied in the request of Mr. Murphy, one of the counsel for the defendants. That request has been carefully compared with the general charge of the court, and found to have been clearly and completely embodied therein, not in the exact words of counsel, but in substance and in legal effect. There was therefore no error in refusing that request. Where a rule of law has been fairly submitted to the jury in the general charge, it is not error to refuse to repeat it in the words of the request of counsel. Lesser Cotton Co. v. St. Louis, I. M. & S. Ry. Co., 114 Fed. 133, 144, 52 C. C. A. 95; Chicago Great Western Ry. v. McCormick, 200 Fed. 375, 118 C. C. A. 527, 47 L. R. A. (N. S.) 18; Atchison, Topeka & Santa Fé Ry. Co. v. Phillips, 176 Fed. 663, 671, 100 C. C. A. 215.

The sixth complaint is that the District Court erred in rendering a judgment against the defendants, but that complaint presents no question of law which has not been considered and determined above.

The result is that none of the complaints of counsel, for the defendants of error in the trial of these cases can be sustained. The judgment below must therefore be affirmed and it is so ordered.