**STELLA v. KAISER et al.**

United States District Court
S. D. New York.
Aug. 2, 1948.

See, also, 81 F.Supp. 807.

Lewis M. Dabney, Jr., and Anderson & Carew, all of New York City (Lewis M. Dabney, Jr., John A. Anderson, and Isa-

dore H. Cohen, all of New York City, of counsel), for plaintiff.

Corbin, Bennett & Delehanty, of New York City, (Harold H. Corbin and Francis B. Delehanty, Jr., both of New York City, of counsel), for individual defendants.

Willkie, Owen, Farr, Gallagher & Walton, of New York City, (Mark F. Hughes of New York City, of counsel), for defendant, Kaiser-Frazer Corporation.

Roger S. Foster, Gen. Counsel, Louis Loss, Associate Gen. Counsel, Alfred Hill, Alexander E. Lipkin and Gerald W. Siegel, all of Washington, D. C. for a Securities & Exchange Commission, amicus curiae.

LEIBELL, District Judge.

The plaintiff, Michael Stella, suing on behalf of himself and all other stockholders of Kaiser-Frazer Corporation, commenced this action by the filing of a complaint in this Court on May 10, 1948. He names ten individuals and the Kaiser-Frazer Corporation as defendants. The individuals are all directors of the corporation and also hold important offices. This is a derivative stockholders suit brought on behalf of the corporation which is named as a nominal defendant, but is a necessary party to the action. The individual defendants are charged with having violated certain provisions of the Securities Act of 1933, 15 U.S.C.A. § 77a et seq., and of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78a et seq. in the purchase on behalf of the corporation of 186,200 shares of the corporation's stock on the New York Curb Exchange and other exchanges at 13½ on February 3, 1948. It is also charged that in making the purchases the individual defendants violated their duty as fiduciaries "to manage the corporation's affairs with due care and with due regard to the laws of the land" and that the actions of the said defendants "constituted a deliberate, or in the alternative, a negligent waste of the funds" of the corporation.

Certain of the individual defendants (G. G. Sherwood, E. E. Trefethen, Jr., Henry J. Kaiser and Walston S. Brown) have moved—"for an order pursuant to Rule 12 (b) (1) of the Federal Rules of Civil Procedure [28 U.S.C.A.] dismissing the action upon the ground that the Court lacks jurisdiction of the subject matter in that the action does not involve a controversy arising under the Constitution and laws of the United States and is not wholly between citizens of different States.

"[They] further move under Rule 12 (b) (6) to dismiss the cause or causes of action alleged in paragraphs '2', '23', '24', '25', '26' and '27' of the complaint for failure to state a claim under which relief can be granted; in the alternative, they move under Rule 12 (f) to strike said paragraphs of the complaint as immaterial."

The enumerated paragraphs of the complaint relate to the charge that the defendants violated the Acts of 1933 and 1934.

The defendants, G. G. Sherwood, E. E. Trefethen, Jr., and Henry J. Kaiser further moved—"for an order pursuant to Rule 12 (b) (2), (3) and (5) of the Federal Rules of Civil Procedure setting aside, vacating and declaring null and void the purported service upon them, and dismissing the action upon the following grounds :-

"1. Under Rule 4(f), the Court lacks jurisdiction of the person of said defendants in that the purported service of process was effected in California and the complaint does not state a cause of action under a statute of the United States providing for service beyond the territorial limits of the State of New York;

"2. The action is in the wrong District because (a) the jurisdiction of this Court is invoked soley on the ground that the action arises under the Constitution and laws of the United States, and (b) said defendants are inhabitants of the State of California;

"3. Service of process was insufficient in that said defendants have not been served with the summons in the action in any manner and more particularly in the manner prescribed by Rule 4(d) (1)".

Subsequently the attorneys stipulated— "1. The motion by the defendants, Sherwood, Trefethen and Henry J. Kaiser for vacature of the service of process upon them upon the ground that service of process was insufficient under Rules 12(b) (5) and 4(d) (1) is withdrawn."

In effect the said four individual defendants move to dismiss the complaint under

304

Rule 12(b) (1) upon the ground that the court lacks jurisdiction of the subject matter of the action; and move to dismiss certain paragraphs of the complaint (charging violations of the Securities Act of 1933 and the Securities Exchange Act of 1934) as failing to state a claim under which relief can be granted, or in the alternative they move to strike said paragraphs as immaterial. Other individual defendants, as served, are deemed to have joined in these motions. The individual defendants, who are residents of California and were served with a copy of the complaint at Oakland, also move to vacate the service of process for lack of jurisdiction over their persons and for improper venue.

 If this court has jurisdiction of the subject matter of the complaint which charges violation of the Securities Act of 1933 and the Securities Exchange Act of 1934 then the process of the court could properly be served on Sherwood, Trefethen and Kaiser in California. Sec. 27 of the Securities Exchange Act of 1934, Title 15 U.S.C.A. § 78aa, and Sec. 22(a) of the Securities Act of 1933, Title 15 U.S.C.A. § 77v(a).[1] The venue question would also be elimated, because the transactions in the Kaiser-Frazer stock on February 3, 1948 took place on the New York Curb Exchange (within the Southern District) and on other exchanges.

The Kaiser-Frazer Corporation, through separate counsel, has moved—"for an order, pursuant to Rule 12(b) (1) and (6) of the Federal Rules of Civil Procedure, setting aside, vacating and declaring null and void the purported service upon the defendant, Kaiser-Frazer Corporation, and dismissing the action upon the following grounds:—

"1. that the complaint fails to state a claim upon which relief can be granted; and

"2. that the court lacks jurisdiction over the subject matter in that the action does not involve a controversy under the Constitution and laws of the United States, al-

---

[1] "§ 78aa. Jurisdiction of offenses and suits.

"The district courts of the United States, the district court of the United States for the District of Columbia, and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder. Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found. Judgments and decrees so rendered shall be subject to review as provided in sections 225 and 347 of Title 28. No costs shall be assessed for or against the Commission in any proceeding under this chapter brought by or against it in the Supreme Court or such other courts. June 6, 1934, c. 404, § 27, 48 Stat. 902; June 25, 1936, c. 804, 49 Stat. 1921."

"77v. Jurisdiction of offenses and suits

"(a) The district courts of the United States, the United States courts of any Territory, and the district court of the United States for the District of Columbia shall have jurisdiction of offenses and violations under this title and under the rules and regulations promulgated by the Commission in respect thereto, and, concurrent with State and Territorial courts, of all suits in equity and actions at law brought to enforce any liability or duty created by this subchapter. Any such suit or action may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the sale took place, if the defendant participated therein, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found. Judgments and decrees so rendered shall be subject to review as provided in sections 225 and 347 of Title 28. No case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States. No costs shall be assessed for or against the Commission in any proceeding under this subchapter brought by or against it in the Supreme Court or such other courts."

though purporting so to do, and said defendant is not amenable to process in this district".

The corporation was organized under the laws of Nevada. Its principal place of business is at Willow Run, Michigan. A copy of the summons in this action was served on an Assistant Secretary of the corporation at Willow Run. A vice president was also served with a copy of the summons and complaint in this Southern District of New York. The president of the corporation makes an affidavit that it is not engaged in business in New York, is not authorized to do business in New York and has not designated any one in New York to receive service of process. No facts are set forth in the affidavits of the parties showing the particulars as to the corporation's business activities within this district. However, if the court concludes that the court has jurisdiction of the subject matter of the complaint and that it charges violation of the Securities Act of 1933 or the Securities Exchange Act of 1934 to the damage of the corporation, then process in the action was properly served in Willow Run and the court would have jurisdiction of the person of the corporation. In the consideration of the issues presented by these motions, an analysis of the complaint is the first step.

The complaint alleges: the residences of the parties (Par. 1); that—"This Court has jurisdiction by virtue of Section 27 of the Securities Exchange Act of 1934 (Title 15, Sec. 78aa, U.S.C.A.), Section 22(a) of the Securities Act of 1933 (Title 15, Sec. 77v(a), U.S.C.A.), and Section 24 of the Judicial Code, as amended, (Title 28, Sec. 41(8), U.S.C.A. [now § 1337] )" (Par. 2); that plaintiff was a stockholder of Kaiser-Frazer at the time the transactions complained of occurred, and that he still is a stockholder and brings this action on behalf of the corporation and the action is not a collusive one to confer jurisdiction on this court (Par. 3); that all the defendants were and are directors and hold certain specified offices in the corporation (Par. 4); that the Kaiser-Frazer Corporation was organized on August 5, 1945, that Kaiser and Frazer were its active promoters and supplied its initial capital through their various business enterprises, and that the directors and officers were selected by Kaiser and Frazer and most of them were former business associates (Par. 5); that since the organization of the corporation the defendants Kaiser and Frazer have either directly or indirectly owned or held control of at least a substantial minority of its stock, about 30% (Par. 6); that Kaiser and Frazer dominate and control the corporation, its officers and directors, and were the primary actors "in causing to be done the transactions hereinafter complained of", which the other individual defendants participated in and approved of (Pars. 7 and 8; that on November 30, 1947 Kaiser-Frazer owed the Bank of America National Trust and Savings Association a balance of $11,280,000 on certain notes which were guaranteed jointly and severally by Joseph W. Frazer and by Henry J. Kaiser Company, The Kaiser Company, and Kaiser Engineers, Inc., corporations substantially owned and controlled by Kaiser; that the notes were payable in monthly installments of $360,000 beginning December 1, 1947, with the remaining balance payable on August 1, 1949, and that they were paid off in full by Kaiser-Frazer Corporation prior to December 31, 1947 (Par. 9); that Kaiser and Frazer caused the notes to be paid to relieve their interests from liability under the guarantee and that in doing so they depleted the corporation's working capital to such an extent that it required new financing, and that in January 1948 the management decided to issue and sell to the public new shares of stock to build up working capital and to purchase certain items of plant and property (Pars. 10 and 11).

The complaint further alleges that in January 1948 the management entered into negotiations with certain underwriters, Otis & Company, First California Company and Allen & Company in which Cyrus Eaton took the lead for the underwriters; that an underwriting contract was signed by which they agreed to purchase from Kaiser-Frazer 1,500,000 shares of new stock and a registration statement was filed with the Securities and Exchange Commission, which was not complete and was not permitted to become effective until February

3d after 3 P.M., the closing time of the New York Curb Exchange (Pars. 12, 13 and 14); that during the year 1947 and up to February 2, 1948 the price of the corporation's stock on the Curb Exchange had fluctuated from a high of $18.25 to a low of $5.00 a share and that the prices of the stock on the other exchanges (San Francisco, Los Angeles, Detroit and Boston) were at all times substantially identical with the Curb prices, that the corporation was confronting difficulties because of the nationwide shortage of steel and other materials, in addition to its difficulties as a newcomer in the automobile business, and was forced to pay higher prices and made some uneconomic transactions, which put the corporation in a poor competitive position and which would have to be disclosed in any prospectus on the new stock issue (Pars. 15 and 16); that the management recognized that the public would not purchase the new shares at a price in excess of the market for the existing shares and the market was watched by both the underwriters and management, that it was agreed that when the market was satisfactory the new shares would be issued at or about the market price, that on February 2, 1948 the stock closed on the New York Curb at 13½ (6800 shares had been sold that day at prices ranging from 13⅜ to 13¾), that management and the underwriters agreed that when the market opened February 3d the Kaiser-Frazer Corporation would enter firm bids at 13½ and purchase all the stock offered at that price, that it was planned that the registration statement for the new stock would become effective after the close of the Curb market on February 3d, that before the registration statement and prospectus could become effective it was necessary to fill in the blanks of the underwriting agreement as to the price per share the underwriters would pay and the price at which the stock would be sold to the public and that because they all knew that in order for the underwriters to sell to the public at the specified price, the market would have to equal or exceed the proposed offering price, the verbal agreement of management and the underwriters was made that the corporation should on February 3d purchase all the stock offered on the Curb Exchange at 13½ (Pars. 17, 18 and 19).

Paragraphs 20 and 21 of the complaint read as follows:

"20. Prior to the opening of the market on February 3, 1948, Kaiser-Frazer placed through its brokers on the Curb Exchange and on the other national securities exchanges mentioned in paragraph 15 hereof orders to purchase at 13½ all stock which was offered. Almost immediately after the opening of the market, it became apparent that the offers of stock were, and would continue to be, much greater than had been contemplated. With full notice of said fact, and after discussing it, the management continued in force and did not withdraw the orders previously given to its brokers and continued to purchase all Kaiser-Frazer stock offered on said national securities exchanges at 13½. Prior to the close of the market on that day Kaiser-Frazer purchased on said national securities exchanges 186,200 shares of its stock. Most of said purchases were made on the Curb Exchange and said transactions and acts occurred and took place in the City, County and State of New York. Said purchases constituted and accounted for the bulk of the trading on said exchanges on that day in the stock of Kaiser-Frazer. The price paid for said stock, plus brokers' commissions, was in excess of $2,500,000.

"21. Throughout the day representatives of said underwriters and said management were in touch with personnel of the Securities and Exchange Commission, making every effort to see that the registration statement became effective at the close of the market on that day. During the course of the day said representatives of the Securities and Exchange Commission were informed of the tremendous volume of offerings of Kaiser-Frazer stock; and prior to the closing of the market said representatives of the Securities and Exchange Commission informed said management and underwriters that a full disclosure would have to be made in the prospectus respecting said purchases. Accordingly, a statement was included in the prospectus respecting said purchases in which it was stated that by 1:15 p. m. Kaiser-Frazer had

purchased 103,500 shares of its stock at 13½ per share; and after the close of the market and before the registration statement became effective, a rider was placed on the outside of said prospectus stating that during the entire trading day Kaiser-Frazer had purchased 186,200 shares of its stock at 13½ per share."

Paragraph 22 alleges that the individual defendants stood in a fiduciary relationship to the Kaiser-Frazer Corporation.

Paragraph 23 alleges: "23. In carrying out the transactions hereinabove complained of said individual defendants directly and indirectly through Kaiser-Frazer, by the use of the mails and means and instrumentalities of interstate commerce and by the use of facilities of national securities exchanges above-mentioned, effected a series of transactions in the stock of Kaiser-Frazer which was registered on said national securities exchanges, creating actual active trading in such stock for the purpose of inducing the purchase by the investing public of the stock of Kaiser-Frazer to be issued pursuant to said registration statement."

Paragraph 24 alleges that in carrying out the said transactions the "individual defendants violated and caused Kaiser-Frazer to violate Section 9(a) (2) of the Securities Exchange Act of 1934" Title 15 U.S.C.A. § 78i (a) (2).[2]

Paragraph 25 alleges:

"25. In carrying out the transactions hereinabove complained of said individual defendants directly and indirectly through Kaiser-Frazer, by the use of means and instrumentalities of interstate commerce and by the use of the mails and of the facilities of the national securities exchanges above-mentioned, did the following:

"(a) They employed a device, scheme and artifice to defraud those members of the investing public who should purchase new shares of Kaiser-Frazer in reliance on the artificial price established by said purchases of stock; and

"(b) In expending the funds of defendant Kaiser-Frazer for the purpose of doing an illegal act they acted in breach of their fiduciary duty to Kaiser-Frazer and committed a fraud upon said Kaiser-Frazer."

Paragraph 26 alleges that in carrying out the transaction complained of the individual defendants violated and caused Kaiser-Frazer to violate Sec. 10(b) of the Securities Exchange Act of 1934 and Rule X-10B-5 under that law, sub-paragraphs 1 and 3.[3]

Paragraph 27 alleges that in carrying out the transaction the individual defendants violated and caused Kaiser-Frazer to

---

[2] "Sec. 9(a). It shall be unlawful for any person, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce, or of any facility of any national securities exchange,

\* \* \* \* \* \*

"(2) To effect, alone or with one or more other persons, a series of transactions in any security registered on a national securities exchange creating actual or apparent active trading in such security or raising or depressing the price of such security, for the purpose of inducing the purchase or sale of such security by others."

[3] "Sec. 10. It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

\* \* \* \* \* \*

"(b) To use or employ, in connection with the purchase or sale of any secu-

rity registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

Rule X-10B-5:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

"(1) to employ any device, scheme or artifice to defraud,

\* \* \* \* \* \*

"(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security."

violate Section 17(a) (1) and (3) of the Securities Act of 1933.[4]

Paragraphs 28 and 29 allege:

"28. The actions of the individual defendants in causing to be carried out the transactions above-mentioned constituted a deliberate, or in, the alternative, a negligent waste of the funds of Kaiser-Frazer. The failure of said defendants to withdraw the purchase orders immediately after it became apparent that a tremendous number of shares, and a number greatly in excess of the shares contemplated, was being or would be unloaded upon Kaiser-Frazer, was particularly culpable.

"29. The transactions herein complained of resulted in great loss and damage to Kaiser-Frazer in that

"(a) the shares purchased were worth substantially less than the amounts, in excess of $2,500,000, expended in their purchase; and

"(b) by virtue of the transactions referred to in paragraphs 10 and 20, the cash of Kaiser-Frazer was substantially reduced. Accordingly, its ability to meet its obligations, carry on its business and make the necessary additions to plant was substantially impaired. As a result Kaiser-Frazer was forced to make material reductions in its operations and in its production of automobiles. As a further result Kaiser-Frazer lost substantial amounts of money and its capacity and ability to produce in the future was materially impaired."

Paragraph 30 contains allegations excusing any demand on the directors of Kaiser-Frazer to bring the suit for the corporation because they are alleged to be jointly and severally responsible and liable for the transactions complained of.

The prayer for relief asks that the individual defendants be ordered to purchase from the corporation the stock of the corporation purchased on February 3, 1948 at their cost plus commissions and other expenses paid by the corporation, that the corporation recover from the individual defendants the damages resulting from the expenditure of cash in the purchase of the stock, that there be an accounting to ascertain the damages the corporation sustained over the amount expended in the purchase of the stock, and that the individual defendants account for and restore to Kaiser-Frazer the sums found to be due on such accounting.

By leave of the Court the Securities and Exchange Commission has filed a memorandum on these motions, because of its interest in the construction of the specified sections of the Securities Act of 1933 and the Securities Exchange Act of 1934. The Commission takes the position that the purchasing of the 186,200 shares by the corporation on February 3d at $13\frac{1}{2}$ was not a "manipulation" of the market condemned by Section 9(a) (2) of the Securities Exchange Act of 1934 or a fraud under Section 17(a) (1) and (3) of the 1933 Act and Section 10(b) of the 1934 Act and Rule X-10B-5 thereunder, but was in fact a "stabilization" of the market which is not per se illegal if it is effected pursuant to the rules and regulations of the Commission issued under Section 9(a) (6).[5]

The Commission's position is stated in the following paragraph quoted from the brief of its counsel: "Accordingly, if the viola-

4 "Sec. 17 (a). It shall be unlawful for any person in the sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

"(1) to employ any device, scheme, or artifice to defraud, or

* * * * * *

"(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

5 "Sec. 9(a). It shall be unlawful for any person, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce, or of any facility of any national securities exchange,

* * * * * *

"(6) To effect either alone or with one or more other persons any series of transactions for the purchase and/or sale of any security registered on a national securities exchange for the purpose of pegging, fixing, or stabilizing the price of such security in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

tions of the Securities Acts alleged in the complaint be construed as based solely on the market stabilization which resulted in the purchase by Kaiser-Frazer Corporation of 186,200 shares of its common stock on February 3, 1948, it is the Commission's view that the complaint alleges no violation of Section 9(a) (2) of the Securities Exchange Act of 1934. A fortiori, in that event, the complaint alleges no violation of Section 10(b) of the 1934 Act or Section 17(a) of the 1933 Act; for the Congress could not have intended that stabilizing activities which are permissible under the specific provisions of Section 9 of the 1934 Act would violate any of the general anti-fraud sections of either statute. As we have already noted, we take no position on whether the violations alleged in the complaint should be construed as based solely on the stabilization which took place or as based on something more."

In support of its contention that Congress refrained from barring absolutely practices by which the market in a stock is "stabilized" through the purchase of its stock at a price in order to prepare the way for the sale of a new issue of the stock, the Commission's counsel quotes the following from the report of the Committee on Interstate and Foreign Commerce, in H.R. 9323, which became the Securities Exchange Act of 1934: "The 'pegging' of security prices is regulated by paragraph (6). Many experts are of the opinion that the artificial stabilization of a security at a given price serves no useful economic function. On the other hand the practice has been widespread on the part of many investment bankers who regard it legitimate, particularly if the public is aware of the plan. Instead of being prohibited, therefore, this practice is left to such regulation by the Commission as it may deem necessary for the prevention of activities detrimental to the interests of investors."

The Commission has put in effect certain disclosure rules, adopted under provisions other than Sec. 9(a) (6), which require in the case of the issue of securities registered under the 1933 Act that a statement of intention to stabilize appear prominently at the beginning of the prospectus. The offering of the new stock under the Kaiser-Fra-

zer prospectus was to be at $13 per share. A regulation (X-9A6-1), adopted by the Commission in relation to offerings at the market, does not apply to the facts alleged in the complaint.

The distinction between unlawful "manipulation" under Sec. 9(a) (2) and regulated "stabilization" under Sec. 9(a) (6) was the subject of a statement made by the Commission February 15, 1948, in ruling on a motion presented "In the Matter of Offering of Common Stock of Kaiser-Frazer Corporation" from which I quote the following: "It has for many years been the Commission's position, expressed both orally and by letter to any member of the public making proper inquiry, that stabilization for the sole purpose of preventing or retarding a decline, whether the stabilization is effected by an underwriter or by an issuer, does not of itself violate Section 9(a) (2) or any other section of the Securities Exchange Act of 1934 so long as the stabilizing purchases are effected at whichever is the lower of two figures—(1) a bona fide independent market price for the security being stabilized or (2) the public offering price of the issue once the offering is made—and that within these restrictions there is no limit under existing statute and rules on the amount of securities which may be purchased in the stabilizing process."

I cannot say that the facts alleged in the complaint are insufficient to charge a manipulation of the market for the purpose of inducing the purchase or sale of Kaiser-Frazer stock. The complaint alleges (Par. 23) that the series of transactions on the exchanges on February 3, 1948 created actual active trading in such stock "for the purpose of inducing the purchase by the investing public of the stock of Kaiser-Frazer to be issued pursuant to said registration statement". The language of Sec. 9(a) (2) condemns "a series of transactions in any security registered on a national securities exchange creating actual or apparent active trading in such security or raising or depressing the price of such security, for the purpose of inducing the purchase or sale of such security by others". Paragraph 19 of the complaint alleges that the reason for the understand-

ing between the management and the under-writers that Kaiser-Frazer should, on February 3, 1948 purchase all the stock that was offered on the Curb Exchange at 13½ was because they well knew that in order for the underwriters to be able to sell the new stock to the public at a certain price the market price would have to equal or exceed the proposed offering price.

Just how a prospective investor would interpret what was behind the unusual activity in Kaiser-Frazer stock on February 3d I cannot say and I do not have to decide that in passing upon this motion. The disclosures in the prospectus, if he read them, would help him. The sales of Kaiser-Frazer stock on February 2d totalled 6800 shares; on February 3d 186,200 were sold. The allegations as to what happened before and on February 3d might mean to those on the inside, that management was trying to stabilize the market in anticipation of the new offering. But that is not the only meaning that could be given those allegations, especially when we consider also paragraph 25 of the complaint which alleges that the defendants "employed a device, scheme and artifice to defraud those members of the investing public who should purchase new shares of Kaiser-Frazer in reliance on the artificial price established by said purchases of stock".

Section 9(e) of the Act of 1934 provides: "(e) Any person who willfully participates in any act or transaction in violation of subsection (a), (b), or (c) of this section shall be liable to any person who shall purchase or sell any security at a price which was affected by such act or transaction, and the person so injured may sue in law or in equity in any court of competent jurisdiction to recover the damages sustained as a result of any such act or transaction."

Defendants argue that the Kaiser-Frazer Corporation could not be both the violator of the law, and at the same time a victim of the violation entitled to sue under § 9(e).

The language of Sec. 9(e) seems to have been designed primarily to protect the investor. But it is very broad and it could be argued that the corporation which bought the stock in transactions which it is claimed violated the Act might come within that section.

A corporation can act only through its agents; and as to third persons, it is chargeable with the necessary consequences of its agents' acts performed within the apparent scope of their authority. If the agents are acting pursuant to a policy determined by the directors and engage in transactions which violate the Securities Exchange Act of 1934, the corporation is not without a remedy against the directors. Is that remedy only such as the corporation has at common law? Is the action based only on a state-created right? Could the corporation, if it had a new and free board of directors, bring this action under the Securities Exchange Act of 1934 (§ 27) claiming that it is an action to enforce a liability or duty created by the Act or the rules and regulations issued thereunder? These questions do not appear to have been answered in respect to these statutes in any of the decided cases.

The case of Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939, lays down certain principles which should guide the district court in determining a motion of this kind attacking its jurisdiction over the subject matter of the action. In that case the plaintiffs alleged that the Court's jurisdiction was founded upon federal questions arising under the Fourth and Fifth Amendments. The defendants were F. B. I. agents. The complaint was for money damages and charged that the defendants imprisoned the plaintiffs and subjected their premises to search and their possessions to seizure, all in violation of their constitutional rights. The defendants contended that the District Court properly dismissed the complaint for want of federal jurisdiction because (1) the complaint stated a common law tort of trespass made actionable by state law and that it therefor did not raise questions arising under the constitution and laws of the United States, and because (2) neither the Constitution nor any law of the United States provided for a recovery in money damages for any violation of the Fourth and Fifth Amendments. The Supreme Court held, in an opinion by Mr. Justice Black, that a mere reading of the complaint refuted the first

contention and that the second one was not decisive on the question of jurisdiction of the federal court. Mr. Justice Black discussed the proper approach to a solution of the question in the following paragraphs, 327 U.S. page 681, 66 S.Ct. page 775: "Whether or not the complaint as drafted states a common law action in trespass made actionable by state law, it is clear from the way it was drawn that petitioners seek recovery squarely on the ground that respondents violated the Fourth and Fifth Amendments. It charges that the respondents conspired to do acts prohibited by these amendments and alleges that respondents' conduct pursuant to the conspiracy resulted in damages in excess of $3,000. It cannot be doubted therefore that it was the pleaders' purpose to make violation of these constitutional provisions the basis of this suit. Before deciding that there is no jurisdiction, the District Court must look to the way the complaint is drawn to see if it is drawn so as to claim a right to recover under the Constitution and laws of the United States. For to that extent 'the party who brings a suit is master to decide what law he will rely upon, and * * * does determine whether he will bring a "suit arising under" the * * * (Constitution or laws) of the United States by his declaration or bill.' The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716. Though the mere failure to set out the federal or Constitutional claims as specifically as petitioners have done would not always be conclusive against the party bringing the suit, where the complaint, as here, is so drawn as to seek recovery directly under the Constitution or laws of the United States, the federal court, but for two possible exceptions later noted, must entertain the suit. Thus allegations far less specific than the ones in the complaint before us have been held adequate to show that the matter in controversy arose under the Constitution of the United States. Wiley v. Sinkler, 179 U.S. 58, 64, 65, 21 S.Ct. 17, 20, 45 L.Ed. 84; Swafford v. Templeton, 185 U.S. 487, 491, 492, 22 S.Ct. 783, 784, 785, 46 L.Ed. 1005. The reason for this is that the court must assume jurisdiction to decide whether the allegations state a cause of action on which the court can grant relief as well as to determine issues of fact arising in the controversy.

"Jurisdiction, therefore, is not defeated as respondents seem to contend, by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction. Swafford v. Templeton, 185 U.S. 487, 493, 494, 22 S.Ct. 783, 785, 786, 46 L.Ed. 1005; Binderup v. Pathé Exchange, 263 U.S. 291, 305–308, 44 S.Ct. 96, 98–99, 68 L.Ed. 308. The previously carved out exceptions are that a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous. The accuracy of calling these dismissals jurisdictional has been questioned. The Fair v. Kohler Die & Specialty Co., supra, 228 U.S. at page 25, 33 S.Ct. at page 411, 57 L.Ed. 716. But cf. Swafford v. Templeton, supra."

"Respondents' contention does not show that petitioners' cause is insubstantial or frivolous, and the complaint does in fact raise serious questions, both of law and fact, which the district court can decide only after it has assumed jurisdiction over the controversy. The issue of law is whether federal courts can grant money recovery for damages said to have been suffered as a result of federal officers violating the Fourth and Fifth Amendments. That question has never been specifically decided by this Court." 327 U.S. page 683, 66 S.Ct. page 777.

So, too, in the case at bar I am of the opinion that all the defendant's arguments do not show that plaintiffs' claims on behalf of the corporation under the Acts of 1933 and 1934 are insubstantial or frivolous. The complaint does raise serious questions, both of law and fact, which this court can decide only after it has assumed jurisdiction over the controversy. Further, the complaint itself shows the relevancy and materiality of the references to the Acts of 1933 and 1934 and their applicability to the conduct of the defendants which is detailed in the complaint. It cannot reasonably be stated that the allegations concerning the violations of the federal statutes were incorporated in the complaint solely for the purpose of obtaining jurisdiction.

In the dissenting opinion by Chief Justice Stone and Mr. Justice Burton in the Bell v. Hood case, they stated: "When the provision of the Constitution or federal statute affords a remedy which may in some circumstances be availed of by a plaintiff, the fact that his pleading does not bring him within that class as one entitled to the remedy, goes to the sufficiency of the pleading and not to the jurisdiction. The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716; Binderup v. Pathé Exchange, 263 U.S. 291, 306–308, 44 S.Ct. 96, 98, 99, 68 L.Ed. 308, and cases cited. But where as here, neither the constitutional provision nor any act of Congress affords a remedy to any person, the mere assertion by a plaintiff that he is entitled to such a remedy cannot be said to satisfy jurisdictional requirements."

Some persons are given a remedy under the Acts of 1933 and 1934 as hereinabove indicated. The only question is this, Is the corporation whose stock has been traded in, in violation of the statutes, entitled to a remedy under the statutes in an action against its directors? Even under the reasoning of the dissenting opinion, the arguments of the defendants in the present case present an issue only as to the sufficiency of the complaint, and not as to the jurisdiction of this Court.

In this case, if we assume, as was pleaded, that the 1934 Act was violated in the purchases of the corporation's stock made for the corporation at the direction of the officer and director defendants, then there is a direct legal connection between the violation of the Act and the loss. In that respect this suit is distinguishable from Downing v. Howard, 3 Cir., 162 F.2d 654.

Some of the acts and conduct condemned in the various subdivisions of the Act of 1934 would, if done by directors to the injury of their corporation, give rise to a common law claim under the state law. If the complaint contains some allegations which support a non-federal claim of the corporation against the directors, the plaintiff is not thereby barred from suing in the federal court if the complaint also contains allegations showing that the same conduct, or the same conduct plus additional acts, violated a federal statute which by its provisions created a right of action in favor of the corporation against the person causing the injury, the directors of the corporation.

On a motion such as this, which is based on lack of jurisdiction in this Court over the subject matter of the action, the Court is not called upon to decide the questions of the ultimate success of plaintiff in proving his claims at the trial. If the court can say, after reading the complaint and examining the provisions of the applicable statutes, that plaintiff's contention that he has pleaded a claim involving a federal question is not frivolous, the court has jurisdiction.

The corporation in its motion under Rule 12(b) (6) raises an issue as to the sufficiency of the complaint in toto but the only point discussed in its brief is the Court's alleged lack of jurisdiction over the subject matter of the action. The individual defendants do not attack the entire complaint as failing to state a claim on which relief can be granted, but they select certain paragraphs of the complaint (paragraphs 2, 23, 24, 25, 26 and 27) as failing to state a claim upon which relief can be granted. They assume thereby that there are two claims pleaded in the complaint, one based on a common-law or state created right and the other a claim created or arising under certain sections of the Acts of 1933 and 1934 hereinabove referred to. Defendants cannot separate

paragraph 2 and paragraphs 23 to 27 inclusive, from the balance of the complaint because those paragraphs specifically refer to the transaction complained of in the other paragraphs of the complaint. Nor can it be said that the allegations in those stated paragraphs contain "redundant, immaterial, impertinent, or scandalous matter" and should for that reason be stricken from the complaint under Rule 12(f).

What the defendants are actually seeking is a ruling that the complaint fails to state any claim under either the Securities Act of 1933 or the Securities Exchange Act of 1934. What I have hereinabove stated in ruling on the motion attacking the jurisdiction of the court over the subject matter of the action is sufficient for a denial of the motion to dismiss for failure to state a claim under the 1933 and 1934 Acts. On a motion of this kind every intendment of the allegations of the pleading must be construed most favorably to the pleader. Tahir Erk v. Glen L. Martin Co., 4 Cir., 116 F.2d 865; Dioguardi v. Durning, 2 Cir., 139 F.2d 774. The merits of the case are not involved in a motion under Rule 12(b) (6), only the sufficiency of the pleading. Is the plaintiff entitled to his day in court on the claim asserted in the pleading? If he has alleged sufficient to give him that right, the defendant's motion must be denied. In my opinion the complaint alleges a claim under the Acts of 1933 and 1934.

For the foregoing reasons all of the motions made by the defendants are denied. Settle an order to that effect on two days' notice.