## SWAFFORD *v.* TEMPLETON.

ERROR TO THE CIRCUIT COURT FOR THE EASTERN DISTRICT OF TENNESSEE.

No. 487. Submitted April 14, 1902.—Decided May 19, 1902.

The court below erred in dismissing this action, for want of jurisdiction, as the right which it was claimed had been unlawfully invaded, was one arising under the Constitution and laws of the United States; and although it has been held that, on error from a state court to this court, where the Federal question asserted to be contained in the record, is manifestly lacking all color of merit, the writ of error should be dismissed, that doctrine relates to questions arising on writs of error from state courts, where, aside from the Federal status of the parties to the action, or the inherent nature of the Federal right which is sought to be vindicated, jurisdiction is to be determined by ascertaining whether the record raises a *bona fide* Federal question.

THIS action was begun by Swafford, plaintiff in error, in the Circuit Court of the United States for the Southern Division of the Eastern District of Tennessee. Templeton and Pearcy, defendants in error, were made defendants to the action, the object of which was to recover damages for an asserted wrongful refusal by the defendants to permit the plaintiff to vote at a national election for a member of the House of Representatives, held on November 6, 1900, in the district of the residence of the plaintiff.

The declaration expressly charged that the plaintiff was a white man, a natural-born citizen of the United States, and was such on November 6, 1900, and had been for many years prior thereto a resident and duly qualified voter in the county of Rhea, State of Tennessee, and, as such, entitled under the Constitution and laws of the United States and of the State to vote for members of Congress, and that he had been illegally deprived of such right by the defendants, when serving as election officers at an election held on November 6, 1900, in the district of the residence of the plaintiff, in said county of Rhea.

The declaration specified the manner in which the right which it was asserted existed under the Constitution and laws of the United States and of the State had been violated, as follows: That for a number of years there had been in force in Tennessee certain special registration and ballot laws, which were operative only in counties containing a population of fifty thousand inhabitants or over, and in cities, towns and civil districts having a population of twenty-five hundred inhabitants or over; that Rhea County was not, prior to 1899, affected by the legislation in question, because it did not have a population of fifty thousand or upwards, and had no town, city or civil district within its borders containing a population of twenty-five hundred; that, not being subject to the operation of the statutes in question, the elections in Rhea County, as in other counties similarly situated, were governed by, and conducted in accordance with, the general election laws prevailing in the State of Tennessee; that in 1899 the legislature of Tennessee passed a law known as chapter 163 of 1899, by which the civil

districts or subdivisions theretofore existing in Rhea County were diminished in number, and so arranged as to cause the civil district in which the plaintiff lived and was entitled to vote to contain a population of over two thousand five hundred inhabitants, and therefore to become subject to the aforesaid special registration and election laws, if the redistricting law in question was valid. It was further averred that at the election held on November 6, 1900, for a member of Congress, the defendants, who were a majority of the election judges conducting such election, when the complainant presented himself to vote, insisted that he mark his ballot, and fold it in a particular way without assistance, as required by the special ballot law. It was asserted that this demand by the election officers was lawful if the special ballot law applied to the conduct of the election, but was unlawful if the election in Rhea County was not subject to such special law and was controlled by the general election law of the State. Averring that he was an illiterate person and unable to mark or fold his ballot, unassisted, and was therefore not able to comply with the provisions of the special ballot law referred to, it was alleged that the vote of plaintiff was rejected by the defendants, despite the insistence of the plaintiff that the election ought legally to have been conducted according to the requirements of the general law and not by those of the special law, for the reason that the redistricting act of 1899 was absolutely void.

The grounds upon which it was alleged that the act of 1899 redistricting Rhea County was void may be thus summarized: Because it was " class legislation in violation of the Federal Constitution," it being asserted that said law was enacted for partisan purposes, and that although there were other counties in the State similarly situated as was Rhea County, the civil districts as laid out by the county courts in such other counties, pursuant to statutory authority, were left undisturbed by the legislature. In other particulars, also, the act in question was averred to constitute special or class legislation. It was specially averred that, as prior to the adoption of the Fourteenth Amendment to the Constitution of the United States, plaintiff enjoyed

the elective franchise, by virtue of that amendment and of enumerated provisions of the state constitution "plaintiff became, and was possessed of, the right of suffrage as an immunity or privilege of citizenship, of which he could not be deprived by the enactment of chapter 163 (the law of 1899) under the circumstances aforesaid."

The defendants filed a demurrer questioning the sufficiency of the declaration upon various grounds.

After hearing upon the demurrer, the court filed an opinion in which it said that it clearly appeared from the declaration that the action did not really and substantially involve a Federal question, and that the court was without jurisdiction or power to entertain the suit. 108 Fed. Rep. 309. An entry was made sustaining the demurrer and dismissing the suit, and it was recited that the dismissal was solely because of the want of jurisdiction. A certificate of the judge, moreover, was filed, which is as follows:

"In this cause I hereby certify that the order of dismissal herein made is based solely on the ground that no Federal question was involved, and that the declaration, in my opinion, disclosed the infraction of no right arising under or out of the Federal laws or Constitution; and that treating the demurrer as presenting this question of jurisdiction, and acting also independently of the demurrer, and on the court's own motion, the suit is dismissed only for the reasons above stated; that is, that the controversy, not arising under the laws and Constitution of the United States, there is consequently no jurisdiction of the Circuit Court of the United States.

"This certificate is made conformably to act of Congress of March 3, 1891, chapter 517, and the opinion filed herein April 30, 1901, is made a part of the record, and will be certified and sent up as a part of the proceedings, together with the certificate."

*Mr. Frederick Lee Mansfield* for plaintiff in error.

*Mr. Jerome Templeton* for defendants in error.

MR. JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

The sole question is, Did the Circuit Court err in dismissing the action, on the ground that it was not one within the jurisdiction of the court? An affirmative answer to this question is rendered necessary by the decision in *Wiley* v. *Sinkler*, 179 U. S. 58. In that case the action was brought in a Circuit Court of the United States against state election officers to recover damages in the sum of twenty-five hundred dollars for an alleged unlawful rejection of plaintiff's vote at a Federal election. A demurrer was filed to the complaint. One of the grounds of the demurrer was that the court had no jurisdiction of the action, because it did not affirmatively appear on the face of the complaint that a Federal question was involved. The demurrer, however, was sustained, not because of the want of jurisdiction, but solely upon the ground that the complaint did not state facts sufficient to constitute a cause of action. The cause was brought directly to this court, under that provision of the act of March 3, 1891, which confers power to review the judgment or decree of a Circuit Court, among others, in any case involving the construction or application of the Constitution of the United States. In this court the contention was renewed that the Circuit Court was without jurisdiction, and this contention involved necessarily also a denial of the power of this court to review, since the right directly to do so was sustainable alone upon the ground that the cause was one involving the construction or application of the Constitution of the United States. The argument advanced to sustain the asserted want of jurisdiction was this, that as the Constitution of the United States did not confer the right of suffrage upon any one, but the same was a privilege which the elector enjoyed under the constitution and laws of the State in which he was entitled to vote, therefore the denial of the right to vote at an election for a member of Congress did not and could not involve the construction or application of the Constitution of the United States. The court, however, decided otherwise, and, speaking through Mr. Justice Gray, said that the case "involved the con-

struction and application of the Constitution of the United States;" that "the right to vote for members of Congress of the United States . . . has its foundation in the Constitution of the United States;" that "the Circuit Court of the United States has jurisdiction, concurrent with the courts of the State, of any action under the Constitution, laws or treaties of the United States, in which the matter in dispute exceeds the sum or value of $2000;" and that, the action being "brought against election officers to recover damages for their rejection of the plaintiff's vote for a member of the House of Representatives of the United States, the complaint, by alleging that the plaintiff was, at the time, under the constitution and laws of the State of South Carolina and the Constitution and laws of the United States, a duly qualified elector of the State, shows that the action is brought under the Constitution and laws of the United States." In concluding its examination of the question of jurisdiction, it was declared that "the Circuit Court, therefore, clearly had jurisdiction of this action." The conclusion thus expressed, by necessary implication, decided the power of this court to review, which would not have been obtained, unless jurisdiction of the Circuit Court had been found to rest on the constitutional right.

It is manifest from the context of the opinion in the case just referred to that the conclusion that the cause was one arising under the Constitution of the United States was predicated on the conception that the action sought the vindication or protection of the right to vote for a member of Congress, a right, as declared in *Ex parte Yarbrough*, 110 U. S. 655, 664, "fundamentally based upon the Constitution of the United States, which created the office of member of Congress, and declared that it should be elective, and pointed out the means of ascertaining who should be electors." That is to say, the ruling was that the case was equally one arising under the Constitution or laws of the United States, whether the illegal act complained of arose from a charged violation of some specific provision of the Constitution or laws of the United States, or from the violation of a state law which affected the exercise of the right to vote for a member of Congress, since the Constitution of the

United States had adopted, as the qualifications of electors for members of Congress, those prescribed by the State for electors of the most numerous branch of the legislature of the State.

It results from what has just been said that the court erred in dismissing the action for want of jurisdiction, since the right which it was claimed had been unlawfully invaded was one in the very nature of things arising under the Constitution and laws of the United States, and that this inhered in the very substance of the claim. It is obvious from an inspection of the certificate that the court, in dismissing for want of jurisdiction, was controlled by what it deemed to be the want of merit in the averments which were made in the complaint as to the violation of the Federal right. But as the very nature of the controversy was Federal, and, therefore, jurisdiction existed, whilst the opinion of the court as to the want of merit in the cause of action might have furnished ground for dismissing for that reason, it afforded no sufficient ground for deciding that the action was not one arising under the Constitution and laws of the United States.

True, it has been repeatedly held that, on error from a state court to this court, where the Federal question asserted to be contained in the record is manifestly lacking all color of merit, the writ of error should be dismissed. *New Orleans Waterworks Co.* v. *Louisiana, ante,* 336, and authorities cited. This doctrine, however, relates to questions arising on writs of error from state courts where, aside from the Federal status of the parties to the action or the inherent nature of the Federal right which is sought to be vindicated, jurisdiction is to be determined by ascertaining whether the record raises a *bona fide* Federal question. In that class of cases not only this court may, but it is its duty to, determine whether in truth and in fact a real Federal question arises on the record. And it is true, also, as observed in *New Orleans Waterworks Co.* v. *Louisiana, supra,* that a similar principle is applied in analogous cases originally brought in a court of the United States. *McCain* v. *Des Moines,* 174 U. S. 168; *St. Joseph & Grand Island Railroad* v. *Steele,* 167 U. S. 659. But the doctrine referred to has no application to a case brought in a Federal court where the

very subject-matter of the controversy is Federal, however much wanting in merit may be the averments which it is claimed establish the violation of the Federal right. The distinction between the cases referred to and the one at bar is that which must necessarily exist between controversies concerning rights which are created by the Constitution or laws of the United States, and which consequently are in their essence Federal and controversies concerning rights not conferred by the Constitution or laws of the United States, the contention respecting which may or may not involve a Federal question depending upon what is the real issue to be decided or the substantiality of the averments as to the existence of the rights which it is claimed are Federal in character. The distinction finds apt illustration in the decisions of this court holding that suits brought by or against corporations chartered by acts of Congress are cases *per se* of Federal cognizance. *Osborn* v. *U. S. Bank*, 9 Wheat. 817; *Texas & Pacific R. R.* v. *Cody*, 166 U. S. 606. It may not be doubted that if an action be brought in a Circuit Court of the United States by such a corporation, there would be jurisdiction to entertain it, although the averments set out to establish the wrong complained of or the defence interposed were unsubstantial in character. The distinction is also well illustrated by the case of *Huntington* v. *Laidley*, 176 U. S. 668, where, finding that jurisdiction obtained in a Circuit Court, this court held that it was error to dismiss the action for want of jurisdiction because it was deemed that the record established that the cause of action asserted was not well founded.

It follows that the court below erred in dismissing the action for want of jurisdiction. Of course, in reaching this conclusion we must not be understood as expressing any opinion as to the sufficiency of the declaration.

*The judgment of the Circuit Court is reversed and the action is remanded for further proceedings, in conformity with this opinion; and it is so ordered.*