### WILLIAMS v. MOLTHER et al.

(Circuit Court of Appeals, Second Circuit. April 9, 1912.)

No. 197.

1. COURTS (§ 329*)—JURISDICTION OF FEDERAL COURTS—AMOUNT IN CONTROVERSY—INFERENCE FROM PLEADING.

Where the bill in a suit in a Circuit Court to compel the local inspectors to give complainant an examination for a pilot's license, which they had refused to do, alleged that complainant was thereby deprived of a right given him by the laws of the United States to his damage in "over $1,000," and no objection was made because the bill did not show the requisite amount involved to give the court jurisdiction, an appellate court may infer that the damages would exceed $2,000, exclusive of interest and costs, and entertain jurisdiction, since in such case complainant would be authorized by an amendment to place the value of the right of which he was deprived at such sum.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 897; Dec. Dig. § 329.*

Jurisdiction of Circuit Courts as determined by the amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Tennent-Stribling Shoe Co. v. Roper, 36 C. C. A. 459; O. J. Lewis Mercantile Co. v. Klepner, 100 C. C. A. 288.]

2. PILOTS (§ 5*)—LICENSES—CONSTRUCTION OF STATUTE—RIGHT TO EXAMINATION.

Rev. St. § 4442 (U. S. Comp. St. 1901, p. 3037), found in title 52 for the regulation of steam vessels, provides that, "whenever any person claiming to be a skillful pilot of steam vessels offers himself for a license, the inspectors shall make diligent inquiry as to his character and merits, and, if satisfied, from personal examination of the applicant, with the proof that he offers that he possesses the requisite knowledge and skill, and is trustworthy and faithful, they shall grant him a license." Section 4405 of the same title (U. S. Comp. St. 1901, p. 3017) authorizes the board of supervising inspectors to "establish all necessary regulations required to carry out in the most effective manner the provisions of this title and such regulations when approved by the Secretary of the Treasury shall have the force of law." Held, that sections 42 and 46 of rule 5 of the regulations established under such authority, which provide that no license as pilot shall be issued to any person who has not served at least three years in the deck department of a steamer, motor vessel, sail vessel, or barge consort, are not "necessary regulations required to carry out in the most effective manner" the provisions of title 52, but, on the contrary, are in direct contradiction of section 4442 thereof; that, while no

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

citizen has an inherent right to a pilot's license, every citizen claiming to be a skillful pilot of steam vessels has a right to be examined for it; and that such regulations, which impose an arbitrary condition precedent to the exercise of such right, are invalid.

[Ed. Note.—For other cases, see Pilots, Cent. Dig. §§ 5, 6; Dec. Dig. § 5.*]

Appeal from the Circuit Court of the United States for the Northern District of New York.

Suit in equity by Frank R. Williams against John Molther and Robert Chestnut, as local inspectors of steam vessels. Decree for defendants, and complainant appeals. Reversed.

For opinion below, see 189 Fed. 700

Frank Williams, in pro. per.
George B. Curtiss, U. S. Atty., of Binghamton, for appellees.

Before COXE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. December 28, 1908, Frank R. Williams, the complainant, applied to John Molther and Robert Chestnut, as United States local inspectors of steamboats at the port of Oswego, for examination for a license as second-class pilot on Lake Ontario and River St. Lawrence.

On the same day the said inspectors refused to examine him because his application did not show that he had three years' service in the deck department of a steam vessel, motor vessel, sail vessel, or barge consort, as required by sections 42 and 46 of rule 5 of the rules and regulations of the board of supervising inspectors of steam vessels. Thereupon he appealed to the supervising inspector at Cleveland, Ohio, who affirmed the decision of the local inspectors. Thereupon he appealed to the supervising inspector general at Washington, who affirmed the decision of the supervising inspector. Thereupon he appealed to the board of supervising inspectors, who decided that it was a matter over which the board has no control.

He then turned to the courts and first to the United States District Court, which we held had no jurisdiction. 180 Fed. 709, 103 C. C. A. 491. Finally, he began this action in equity against the local inspectors (appearing throughout on his own behalf) in which he alleged his own qualifications, the refusal of the defendants to examine him, and prayed that sections 42 and 46 of rule 5 of the board of supervising inspectors of the department of commerce and labor be declared illegal and void, and that the defendants be enjoined from enforcing the same, and from refusing to examine him for the license. The defendants answered, admitting that the complainant had made the application, and that they had refused it for reasons stated in the bill.

The cause was tried upon an agreed statement of facts which submitted to the decision of the judge holding the Circuit Court the single question of law whether the provisions of the rules complained of are invalid and void or are a lawful condition precedent to the right of ex-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

amination for a pilot's license. The United States Attorney, who represents the defendants, states in his brief:

"The plaintiff appears to be an honest citizen and is actuated by a belief that he has been deprived of a legal right; hence the government has not deemed it advisable to insist on technicalities concerning the form of action under which the question involved is sought to be determined."

[1] The action is certainly one of a civil nature in equity arising under a law of the United States within Act March 3, 1875, c. 137, 18 Stat. 470 (U. S. Comp. St. 1901, p. 508), giving jurisdiction to the Circuit Court. But the only allegation contained in the complaint as to the amount or value of the matter in dispute is that the act of the defendants constitutes an invasion of the complainant's business privileges to his loss and irreparable injury of over (without saying how much it is over) $1,000. The act requires that the matter in dispute should exceed, exclusive of interest and costs, the sum or value of $2,000. As the complainant is a layman and without counsel and the defendants have not taken any objection on this ground in the Circuit Court, and that court has decided the question of law which the parties agreed to submit to it, we are not disposed to suggest this objection.

If the complainant were to ask leave to amend, we would certainly grant it. And there is authority for our holding that we may infer that unliquidated damages alleged to be in excess of $1,000 are not less than $2,000, exclusive of interest and costs, because of the conduct of the parties. Mr. Justice Holmes said in Giles v. Harris, 189 U. S. 475, 485, 23 Sup. Ct. 639, 641 (47 L. Ed. 909):

"It is true that by Act Aug. 13, 1888, c. 866, § 1, 25 Stat. 433, 434 [U. S. Comp. St. 1901, p. 508], the Circuit Courts are given cognizance of suits of a civil nature, at common law or in equity, arising under the Constitution or laws of the United States, in which the matter in dispute exceeds the sum or value of $2,000. We have recognized, too, that the deprivation of a man's political and social rights properly may be alleged to involve damage to that amount, capable of estimation in money. Wiley v. Sinkler, 179 U. S. 58 [21 Sup. Ct. 17, 45 L. Ed. 84]; Swafford v. Templeton, 185 U. S. 487 [22 Sup. Ct. 783, 46 L. Ed. 1005]. But, assuming that the allegation should have been made in a case like this, the objection to its omission was not raised in the Circuit Court, and as it could have been remedied by amendment, we think it unavailing. The certificate was made alio intuitu. There is no pecuniary limit on appeals to this court under section 5 of Act 1891, c. 517, 26 Stat. 826, 828 [U. S. Comp. St. 1901, p. 549], The Paquete Habana, 175 U. S. 677, 683 [20 Sup. Ct. 290, 44 L. Ed. 320]. And we do not feel called upon to send the case back to the Circuit Court in order that it might permit the amendment. In Mills v. Green, 159 U. S. 651 [16 Sup. Ct. 132, 40 L. Ed. 293]; s. c., 69 Fed. 852 [16 C. C. A. 516, 30 L. R. A. 90], no notice was taken of the absence of an allegation of value in a case like this."

Reference may also be had to the language of the court in United States v. Trans-Missouri Freight Association, 166 U. S. 290, 310, 17 Sup. Ct. 540, 41 L. Ed. 1007.

In Wiley v. Sinkler, 179 U. S. 58, 21 Sup. Ct. 17, 45 L. Ed. 84, and Swafford v. Templeton, 185 U. S. 487, 22 Sup. Ct. 783, 46 L. Ed. 1005, it was held that the deprivation of a man's political and social rights, such as the right to vote, may be alleged to involve damage in money.

[2] Section 4405 U. S. Rev. Stat., provides:

"Sec. 4405. (Meetings of board; assignment of districts.) The supervising inspectors and the supervising inspector-general shall assemble as a board once in each year, at the city of Washington, District of Columbia, on the third Wednesday in January, and at such other times as the Secretary of the Treasury shall prescribe, for joint consultation, and shall assign to each of the supervising inspectors the limits of territory within which he shall perform his duties. The board shall establish all necessary regulations required to carry out in the most effective manner the provisions of this title, and such regulations, when approved by the Secretary of the Treasury, shall have the force of law. The supervising inspector for the district embracing the Pacific Coast shall not be under obligation to attend the meetings of the board oftener than once in two years; but when he does not attend such meetings he shall make his communications thereto, in the way of a report, in such manner as the board shall prescribe."

And under this the board of supervising inspectors have adopted sections 42 and 46 of rule 5:

"42. No original license as second-class pilot shall be issued to any person who has not had three years' experience in the deck department of a steam vessel, motor vessel, sail vessel, or barge consort. The local inspectors shall, before granting a license as second-class pilot, satisfy themselves that the applicant is qualified to steer; provided, that on the Mississippi and territory rivers one year of such required experience must have been in the pilot house as steersman."

"46. No original license for pilot of any route shall be issued to any person, except for special license for steamers of 10 gross tons and under, who has not served at least three years in the deck department of a steamer, motor vessel, sail vessel, or barge consort, one year of which experience must have been obtained within the three years next preceding the date of application for license, which fact the inspectors may require, when practicable, to be verified by the certificate, in writing, of the licensed master or pilot under whom the applicant has served, such certificate to be filed with the application of the candidate."

The trial judge held that these rules were "necessary regulations required to carry out in the most effective manner" the provisions of title 52, and were not inconsistent with Rev. Stat. U. S. § 4442, which reads:

"Sec. 4442. (License of pilot.) Whenever any person claiming to be a skillful pilot of steam vessels offers himself for a license, the inspectors shall make diligent inquiry as to his character and merits, and if satisfied, from personal examination, of the applicant, with the proof that he possesses the requisite knowledge and skill, and is trustworthy and faithful, they shall grant him a license for the term of one year to pilot any such vessel within the limits prescribed in the license; but such license shall be suspended or revoked upon satisfactory evidence of negligence, unskillfulness, inattention to the duties of his station, or intemperance, or the willful violation of any provision of this title."

It is fair to say that Attorney General Miller came to a similar conclusion in respect to a master under section 4439, Rev. Stat. U. S., 20 Opinions Attorney General, 213.

We are not convinced by these opinions. Congress unquestionably has power to regulate commerce upon the waters involved, and in so doing to restrict the right to act as pilot upon steamers navigating them, to persons who shall have obtained a license. It can also make the very regulations complained of. But the question is whether these regulations are necessary to carry out the provisions of title 52, Rev.

Stat. U. S., which the board of supervising inspectors has the power to make. To exclude from the right of examination for a license persons who have not had the prescribed experience seems to us to be a direct contradiction of section 4442, which entitles any person claiming to be a skillful pilot of steam vessels to be examined by the local inspectors. While no citizen has the inherent right to a pilot's license, every citizen has a right to be examined for it. The local inspectors are to determine the applicant's qualifications. They may hold in any case that he has not had sufficient deck experience. That, however, is quite different from refusing him an examination for this reason. The period of such experience necessary to qualify an applicant would seem in the nature of things to be different in different cases. One applicant might be qualified after one year's experience when another would not be qualified after five years. It seems to us purely arbitrary to say that no one is qualified to act as a pilot because he has not had any fixed period of deck experience. An engineer or an owner who was not in the deck department at all might well by observation and attention have acquired all the qualifications required by the law. The rule imports into the law a condition not to be found in it, and we do not think that it is necessary to carry out the provisions of the title nor even useful or appropriate for that purpose, as it may prevent citizens entirely competent from obtaining a license. Moreover, as we stated in our previous opinion, "such or similar restrictions might easily be used to create a dangerous monopoly of the business of pilots and marine engineers."

The decree is reversed and the court below directed to enter a decree declaring the provisions in question of rule 5 invalid, and directing the defendants to examine the complainant.