**Samuel E. RHOADS, Plaintiff,**

v.

**Robert J. HORVAT, Sheriff of Pueblo County, and David Marquez, Deputy Sheriff of Pueblo County, Defendants.**

**Civ. A. No. 66–C–192.**

United States District Court
D. Colorado.

July 10, 1967.

Eugene Deikman and Harry K. Nier, Jr., Denver, Colo., for plaintiff.

White & Steele, Denver, Colo., for defendant, Robert J. Horvat.

Seavy & Seavy, Pueblo, Colo., for defendants, Robert J. Horvat and David Marquez.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, District Judge.

The above case is before the Court on the defendants' motion for judgment notwithstanding the verdict and for a new trial. The case was tried to a jury on April 20, 24, 25 and 26, 1967. The action was brought pursuant to Sections 1983, 1985, Title 42 United States Code, the complaint charging violation of plaintiff's civil rights and conspiracy.

The plaintiff was arrested without a warrant on February 11, 1966 by the defendants, Sheriff and Deputy Sheriff of the County of Pueblo. The facts are somewhat complex and we need not, for our purposes, recite all of them. It is sufficient to note that the plaintiff's arrest grew out of an effort on the part of the defendants to execute a warrant against one John Dean whose parents had early in February filed a petition in the State court seeking a "Hold and Treat" Order and a psychiatric examination. Dean was at the time a student at Southern State College in Pueblo. Plaintiff was a faculty member and had Dean in class. Following a family quarrel Dean

was ordered out of the family home by his parents and thereafter was received, at least temporarily, in the home of George Jones, Jr., who was also a professor at Colorado State College. The plaintiff at the time resided in a small house on the Jones property.

Prior to the arrest of plaintiff the defendants had for several days tried in vain to locate and arrest John Dean. Dean had been avoiding arrest in order to allow his lawyer to investigate the case and take action. On February 11, 1966, defendants received word that a pacifist meeting was to be held at the Jones house and that Dean would be present. They had the house under surveillance late on the afternoon of February 11 and were questioning people who came on the premises. Plaintiff was there because of the fact that he resided on the grounds. Defendants nevertheless questioned him about the whereabouts of John Dean. He refused to give them any information, and according to the defendants, interfered with their efforts to obtain information. The extent of his interference was disputed. In any event, he, together with others, were arrested and taken to jail. He was held in jail for some thirty to forty-five minutes as were the others who were picked up. They were released when John Dean was discovered inside the Jones' home and was himself brought first to the jail and then to the hospital for examination.

We have considered the several points raised by the defendants concerning the Court's charge and other alleged errors. We are of the opinion that they are all without merit. The one point to which the defendants gave particular emphasis when oral arguments were had on this motion was that it was error to fail to submit separate verdicts to cover the alleged substantive injury and the conspiracy. We note that the defendants did not object at the time to this manner of submitting the verdict. It was submitted in this form so as to avoid possible confusion with respect to double recovery, the Court having concluded that the two alleged injuries growing out of the arrest

and the conspiracy merged so as to preclude separate recoveries. The "conspiracy" was to be inferred from the two defendants acting in concert or as accessories. Neither side objected to this manner of handling the submission to the jury.

The defendants also complain about the amount of the verdict. This, we believe, *does* have merit.

The cases furnish little in the way of guidance to a proper conclusion on this subject of excessiveness of damages. An early decision of this Circuit (which was at the time the Eighth), is Wayne, et al. v. Venable, et al., 260 F. 64. This involved a deprivation of the right to vote. The prayer was for $5,000.00 actual and $10,000.00 punitive damages. Each of the plaintiffs recovered verdicts of $2,-000.00. These judgments were affirmed notwithstanding that there was no proof of actual damage, the Court noting that some damage is presumed and that it is for the jury to determine the value of the deprivation. The Court said:

"An action for damages in the proper federal court lies by a qualified elector for his wrongful deprivation of this right by a defendant or by an effective conspiracy of several defendants who deprive him thereof. Wiley v. Sinkler, 179 U.S. 58, 62, 63, 64, 21 Sup.Ct. 17, 45 L.Ed. 84; Swafford v. Templeton, 185 U.S. 487, 491, 492, 22 Sup.Ct. 783, 46 L.Ed. 1005.

"In the eyes of the law this right is so valuable that damages are presumed from the wrongful deprivation of it without evidence of actual loss of money, property, or any other valuable thing, and the amount of the damages is a question peculiarly appropriate for the determination of the jury, because each member of the jury has personal knowledge of the value of the right. Scott v. Donald, 165 U.S. 78, 17 Sup. Ct. 265, 41 L.Ed. 632; Wiley v. Sinkler, 179 U.S. 58, 65, 21 Sup.Ct. 17, 45 L.Ed. 84."

In Nixon v. Herndon, et al., 273 U.S. 536, 47 S.Ct. 446, 71 L.Ed. 759, the Su-

preme Court, through Mr. Justice Holmes, upheld a complaint describing the violation of the right to vote in the primary election in Texas. This is alleged to have arisen under the Fourteenth Amendment. The complaint prayed for damages in the amount of $5,000.00. The Supreme Court held void a statute which prohibited Negroes from participating in a primary election. The Court noted "that private damages may be caused by such political action and may be recovered for in a suit at law. * * * "

More recently, the Third Circuit, in Basista v. Weir, et al., 340 F.2d 74 (1965), had before it a case in which an assault and battery was committed in the course of an arrest. Here the plaintiff received an award of $1,500.00 punitive, but no compensatory damages. The case was reversed on other grounds, but the Court (*per* Chief Judge Briggs) recognized that there can be a recovery of compensatory damages notwithstanding that the evidence fails to establish that special damages were suffered. The Court said that the federal common law of damages applies and recognized that there can be both compensatory and exemplary damages in such a case.

■ In the case at bar an effort was made to prove loss of earnings. It was the plaintiff's theory that he was terminated from the college as a result of the arrest. He failed, however, to establish this. In the first place, he did not have tenure and prior to the present incident he had applied for a leave of absence for the purpose of pursuing graduate studies. He stated that this was conditioned on his being able to obtain such a fellowship. He had, however, applied for leave and it had been granted. He failed to show that his departure from the college had any connection with his having been arrested. At the trial, the President of the College testified that plaintiff was even then on a leave status. He also testified that his leave status had no relationship to the arrest. The jury was not specifically authorized to consider this loss stemming from the leave status but was allowed to consider any "out of pocket" loss. It is more than likely that the jury concluded that plaintiff lost $7200.00, a year's salary. This alleged loss of salary is so inconclusive that it cannot be considered an element of damage.

■■ Apart from special monetary damages it is open to the jury in a case such as this to make a determination as to the amount that plaintiff is entitled to be awarded for the deprivation. This, of course, would include his subjective pain and suffering and humiliation. As was said by Judge Sanborn in Wayne v. Venable, supra, the amount of such award is peculiarly appropriate for the determination of the jury. The question of exemplary damages is not the same. This is an award which is made to plaintiff based upon the wilfulness or wantonness of the defendants' act and has for its purpose punishment rather than compensation. While the jury has discretion in making these awards they are nevertheless like other items of damage subject to the supervision of the Court.

In considering this issue of excessiveness we do not depreciate the importance of the right involved nor the seriousness of the act committed. At the same time the award must bear some relationship to the harm inflicted, as well as to the extent of culpability of the defendants' acts (in case of punitive damage). There have been substantial recoveries approved but they are few in number and have generally involved circumstances more aggravated than the circumstances that are here present. See, e. g., Quinn v. Rosenberg (Mo.App.1966) 399 S.W.2d 433, in which a judgment in the amount of $10,-000.00 compensatory damages and $500.-00 punitive damages was upheld. This was a false imprisonment-assault and battery case brought by a woman lawyer who was abused physically and falsely arrested and imprisoned at the instigation of defendant. She was detained for four hours. The aggravated circumstances caused the Missouri Court to uphold the verdict.

Plaintiff has also cited Sheehan v. Holman, (N.J.1928) 141 A. 170, 6 N.J.Misc.

330, 346. Here an award of $25,000.00 was held not excessive where a prominent attorney was detained for one day on charges of insanity. Here again, of course, the injury was palpable and severe. Generally speaking, however, the awards have been much less, and have averaged generally less than $5,000.00. See, e. g., Brooks v. Moss, W.D.S.C.1965, 242 F.Supp. 531; McArthur v. Pennington, E.D.Tenn.1963, 253 F.Supp. 420; Rue v. Snyder, E.D.Tenn.1966, 249 F.Supp. 740; Solomon v. Penna R. Co., D.N.Y.1951, 96 F.Supp. 709; Antelope v. George, D.C.Idaho 1962, 211 F.Supp. 657; Cole v. Chicago, St. Paul M. & O. Ry. Co., D.C.Minn.1945, 59 F.Supp. 443. (The award here was more than the amount noted above, but the verdict returned was reduced.)

■ We are fully cognizant that caution should be exercised in setting aside a verdict in a case such as this. There is a hazard that the court will merely substitute its opinion for that of the jury. The court should set aside a verdict only where it can be said that the award is of such magnitude as to shock the conscience of the court.

In the case at bar we do not doubt that the plaintiff was outraged by the arrest. His main reaction was one of zeal to uphold the right which had been invaded. Secondary concerns were apprehension about inability to keep a date with a young lady on the night in question and embarrassment because of jocular remarks of his colleagues. They referred to him as a "jailbird."

■ We have carefully considered the full facts and circumstances and are of the opinion that the verdicts are so grossly excessive as to require court intervention. We think it likely that the jury was unduly influenced by the conduct of the defendants toward two other persons who were arrested at the same time plaintiff was arrested. Whether or not this was the factor that caused the jury to act as it did, we are of the opinion that it should be nevertheless reduced or a new trial should be granted. The Court is of the opinion that an award of $5,000.00 compensatory and $2,500.00 exemplary damages would be a liberal award under the facts and circumstances of this case. It is, therefore, determined that amounts over and above these sums are excessive. Accordingly, it is

Ordered that the plaintiff remit all of those sums in excess of $5,000.00 actual damages and $2,500.00 exemplary damages. He may do so by filing an election at any time within twenty days. Should he elect to stand on the verdicts as awarded, he should also do so in writing within the time specified. If he elects to stand on the verdicts, it is

Ordered that the defendants' motion for a new trial be granted.