William J. WARNER, Jr., et al.

v.

**BOARD OF TRUSTEES OF THE POLICE
PENSION FUND OF the CITY OF
NEW ORLEANS et al.**

Civ. A. No. 67–499.

United States District Court
E. D. Louisiana,
New Orleans Division.

Dec. 19, 1967.

Fritz H. Windhorst and Philip J. Foto, New Orleans, La., for plaintiff.

Jack P. F. Gremillion, Atty. Gen. State of Louisiana, Rudolph O. Vorbusch, Asst. Atty. Gen., Beuker F. Amann and Alvin W. LaCoste, Asst. City Atty., New Orleans, La., R. O. Vorbusch, Alvin J. Liska, City Attys., Lawrence L. McNamara, Sp. Counsel, for defendants.

CHRISTENBERRY, District Judge.

The plaintiffs in this suit are former members of the New Orleans Police Department. They attack the constitutionality of Louisiana Revised Statutes Title 33, §§ 2292, 2295.1 and 2298 and bring this suit as a class action in accordance with Fed.Rules Civ.Proc. 23(a) (3) on behalf of themselves and all those similarly situated.

The statutes under attack concern the administration of the Police Pension Fund for the City of New Orleans. Named as parties defendant are the Board of Trustees of the Police Pension Fund of the City of New Orleans, its various members and the State of Louisiana.

In essence the plaintiffs contend that they have been deprived of their property without due process of law and denied equal protection of the laws. They argue the statutes in question require a 5% monthly deduction from each policeman's salary to be contributed to the pension fund, which contribution is not refunded to the policeman, if he terminates his relationship with the Police Department for one reason or another prior to qualifying for pension benefits. Petitioners contend that this amounts to deprivation of property without due process of law and because these provisions are only applicable to New Orleans policemen they allege they are being discriminated against and denied equal protection of the laws all in violation of the Fourteenth Amendment of the United States Constitution. In addition to attacking the constitutionality of the statutes in question, petitioners seek an accounting and refund of all funds which have been deducted from their salaries.

Jurisdiction was initially alleged under Title 28 U.S.Code § 1331(a) and in an amending complaint jurisdiction was additionally alleged under Title 28 U.S. Code, § 1343(3) and injunctive relief was also sought.

Now before the Court are motions to dismiss for lack of jurisdiction alleging:

1. No substantial federal question is presented.

2. The state has not consented to be sued.

Alternatively, movers request that should the Court find jurisdiction is properly vested, the Court should abstain from hearing the matter until the highest court of the state has been afforded an opportunity to decide the issues presented.

## I.

### LACK OF SUBSTANTIAL FEDERAL QUESTION

In support of their contention that no substantial federal question is presented, movers cite Swift & Company v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed. 2d 194 (1965); Jones v. State Road Department of the State of Florida, 260 F.2d 421 (5th CCA 1958) and California Water Service Company v. City of Redding, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323 (1938).

These cases hold that to confer jurisdiction a complaint must present a substantial federal question and the lack of substantiality may be obvious because previous decisions clearly show the complaint to be without merit.

■■■ At this stage of the proceedings however the holdings in those cases do not dispose of the issues before the Court, because in the case at bar, unlike the cases cited, the "federal question" is clearly and properly pleaded and the federal right is an essential element of the plaintiffs' cause of action. The federal question being properly before the Court, jurisdiction vests in this Court and jurisdiction once properly vested cannot be divested or impaired because other non-federal questions may be involved. 12 A.L.R.2d 60, and cases cited.

■ Although the case of Pennie v. Reis, 132 U.S. 464, 10 S.Ct. 149, 33 L.Ed. 426 (1889) cited by movers may be persuasive in deciding the merits of the complaint, that case standing alone does not make the issues presented here matters so well settled that a lack of substantial federal question results. Dismissal because the claim sought to be asserted is well settled and obviously without merit is limited to those cases in which the lack of merit is "very plain." Swafford v. Templeton, 185 U.S. 487, 22 S.Ct. 783, 46 L.Ed. 1005 (1902).

■ Nor is jurisdiction defeated by the possibility that the averments may state a cause of action on which petitioners might not ultimately recover. Bell

v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

The requisite substantial federal question is apparent and the motion to dismiss for lack of same is denied.

## II.

### ABSENCE OF STATE CONSENT TO BE SUED

Defendants argue that absent their consent, the Eleventh Amendment to the United States Constitution immunizes them from this suit. The Eleventh Amendment reads as follows:

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against any one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State."

■ Though the language of this Amendment would appear to be no bar to a suit against the state by one of its own citizens, it is well settled that without its consent to be sued a state is immune from suit in a federal court brought by its own citizens as well as by citizens of another state. Hans v. State of Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842; Parden v. Terminal R. Co., 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 and cases cited therein.

This being true, defendants argue that the individual board members, named as defendants have been named in their official capacities since relief is prayed for against the board, and as representatives of the state they stand in the shoes of the state and may not be sued without the state's consent. They point out that the Governor and Attorney General are obviously only nominal parties defendant. Ex parte State of New York No. 1, 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057; Louisiana Land and Exploration Company v. State Mineral Board, 229 F.2d 5 (5th CCA, 1956), cert. den. 351 U.S. 965, 76 S.Ct. 1029, 100 L.Ed. 1485 (1956); Ward v. Louisiana Wildlife & Fisheries Commission, 224 F.Supp. 252 (E.D.La. 1963), aff. 347 F.2d 234 (5th CCA, 1965).

Defendants then bolster their immunity contention by quoting the following language from Parden v. Terminal R. Co., supra:

"Nor is the state divested of its immunity 'on the mere ground that the case is one arising under the constitution or laws of the United States.'"

The Parden case however involved substantially different issues and in support of the above quoted language the Court cited Hans v. State of Louisiana, supra; Duhne v. State of New Jersey, 251 U.S. 311, 40 S.Ct. 154, 64 L.Ed. 280; Smith v. Reeves, 178 U.S. 436, 447–449, 20 S.Ct. 919, 44 L.Ed. 1140; Ex Parte New York, 256 U.S. 490, 497–498, 41 S.Ct. 588, 65 L.Ed. 1057.

█ The cases cited are distinguishable from the case at bar. The thrust of the Hans case was not an attack on the constitutionality of the statute itself but a federal determination of a contractually rooted right or duty flowing between a citizen and the state. Such a determination by the federal courts is precisely what the concept of the Eleventh Amendment was intended to prohibit.

The Duhne case, an attempt to restrain the State of New Jersey from enforcing the Eighteenth Amendment to the United States Constitution, the Smith case involving a waiver of immunity in a suit to collect tax monies allegedly levied under a wrongful assessment and Ex Parte New York which involved an in rem admiralty proceeding are also non-determinative of the issues now before the Court.

The issue to be resolved here is whether the Eleventh Amendment as interpreted by the courts immunizes officials of a state from a suit to enjoin them from enforcing under color of state law a statute alleged to be repugnant to the U. S. Constitution.

██ This Court holds that the Eleventh Amendment does not confer such immunity and relies on basic principles announced in Osborn v. Bank, 9 Wheat. 738, 6 L.Ed. 204, discussed at length in Pennoyer v. McConnaughy, 140 U.S. 1,

11 S.Ct. 699, 35 L.Ed. 363 (1891) and rationalized by fiction in Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

In Pennoyer the court discussed the Osborn principles and though Pennoyer involved a suit by a citizen of one state against another state and Osborn involved a suit by officials of the Bank of the United States against the State of Ohio the principles pronounced are appropriate here. The Court speaking through Mr. Justice Lamar said:

"It is believed that the case before us is within the principles of the great and leading case of Osborn v. Bank, 9 Wheat. 738 [6 L.Ed. 204,] the opinion in which was delivered by Chief Justice Marshall. That was a suit in equity, brought in the circuit court of the United States for the district of Ohio, by the president, directors and company of the Bank of the United States, to restrain Ralph Osborn, auditor of the state of Ohio, from executing a law of that state which was in violation of and destructive to the rights and privileges conferred upon the complainants by the charter of the bank and by the constitution of the United States. * * * The statute of Ohio, under which the defendant was acting, was then examined and found to be unconstitutional. *The case may then be said to have fully established the doctrine that an officer of a state may be enjoined from executing a statute of the state which is in conflict with the constitution of the United States, when such execution would violate and destroy the rights and privileges of the complainant.* The principles stated by Chief Justice Marshall in that case, that, 'in all cases where jurisdiction depends on the party, it is the party named in the record,' and that 'the eleventh amendment is limited to those suits in which the state is a party to the record,' has been qualified to a certain degree in some of the subsequent decisions of this court; and now it is the settled doctrine of this court that the question whether a suit

is within the prohibition of the eleventh amendment is not alway determined by reference to the nominal parties on the record, as the court will look behind and through the nominal parties on the record to ascertain who are the real parties to the suit. [State of] New Hampshire v. [State of] Louisiana, [108 U.S. 76, 2 S.Ct. 176, 27 L.Ed. 656,] and [State of] New York v. State of Louisiana, 108 U.S. 76, 2 S.Ct.Rep. 176 [27 L.Ed. 656]; In re Ayers, supra, 123 U.S. 443, 8 S.Ct. 164, 31 L.Ed. 216. But the general doctrine of Osborn v. Bank, that the circuit courts of the United States will restrain a state officer from executing an unconstitutional statute of the state, when to execute it would violate the rights and privileges of the complainant which had been guaranteed by the constitution, and would work irreparable damage and injury to him has never been departed from." (Emphasis added). 11 S.Ct. 701, 702.

The fiction of Ex Parte Young followed. In that case the court after reviewing the jurisprudence to that date, including Osborn and Pennoyer and others, concluded that an officer of a state can be enjoined from enforcing an unconstitutional act under color of state law because "the act to be enforced is alleged to be unconstitutional; and if it be so, the use of the name of the state to enforce an unconstitutional act to the injury of complainants is a proceeding without the authority of and one which does not affect, the state in its sovereign or governmental capacity. It is simply an illegal act upon the part of a state official in attempting, by the use of the name of the state, to enforce a legislative enactment which is void because unconstitutional. If the act which the state attorney general seeks to enforce be a violation of the Federal Constitution, the officer, in proceeding under such enactment, comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." 209 U.S. at 159, 160, 28 S.Ct. at 454.

Thus Ex Parte Young denies state officials the use of the shield of the Eleventh Amendment, even though the practical effect of such a denial results in an injunction against the state itself.

This concept of stripping a state official of his robes of immunity has been followed by the Supreme Court, in Georgia R. R. and Banking Company v. Redwine, 342 U.S. 299, 72 S.Ct. 321, 96 L.Ed. 335 (1952) and the Fifth Circuit Court of Appeals, in Louisiana State Board of Education v. Baker, 339 F.2d 911, 914 (5th CCA 1964).

"Despite the pervasive inconsistencies, the case law is dominated by one outstanding generalization that is usually followed but sometimes violated—that sovereign immunity does not prevent a suit against a state or federal officer who is acting either beyond his authority or in violation of the Constitution." Davis, Administrative Law Treatise, 27:03 (1958).

For these reasons the motion to dismiss for lack of jurisdiction based on the absence of state consent to be sued is denied.

### III.

### ABSTENTION

Having found jurisdiction properly vested in this Court, the alternative motion of the defendants, that this Court in its discretion should refrain from exercising that jurisdiction must now be considered.

Movers argue that until the highest court of the state has had an opportunity to construe the statutes involved, this Court should postpone the exercise of its jurisdiction and in support thereof cite Albertson v. Millard, 345 U.S. 242, 73 S.Ct. 600, 97 L.Ed. 983 (1953); Ford Motor Company v. Department of Treasury of State of Indiana, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945); Harrison v. NAACP, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959); Louisiana Power and Light v. City of Thibodaux,

360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1960) and England v. Louisiana State Board of Medical Examiners, D.C., 180 F.Supp. 121.

 ·Abstention in the Albertson case was justified because the construction by the state court of the statute involved was considered a prerequisite to a determination of the scope of the statute. The Harrison and Louisiana Power and Light cases also involved real questions of statutory interpretation. Keeping in mind that a federal court is bound by the interpretation that the highest court of a state gives to its own statute, the significance of the state interpretation is apparent.

The Ford Motor Company case was decided on principles of sovereign immunity and not abstention and thus is of little help in deciding this issue.

In the England case abstention was appropriate because the state court's answer to a question of local law could have effectively ended the controversy.

But the considerations in those cases which gave rise to the courts' decision to abstain from exercising their jurisdiction are not present in the case at bar. There are no ambiguities in the statutes involved in the instant case. Their meaning and scope are clear. The primary questions that must be answered in this litigation are:

1. Did the policemen have a vested property right in the deducted funds.

2. If so, does the operation of the statutes involved constitute deprivation of this property without due process of law.

3. Considering all the circumstances, has the Legislature made a reasonable classification in limiting the application of these statutes to New Orleans policemen.

The decision to abstain involves a discretionary exercise of a court's equity power and must be made on a case by case basis. Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964).

"In the bulk of abstention cases * * *, the unsettled issue of state law princi-pally concerned the applicability of the challenged statute to a certain person or a defined course of conduct, whose resolution in a particular manner would eliminate the constitutional issue and terminate the litigation." Baggett v. Bullitt, Id. See also Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (Dec. 5, 1967).

Because of the absence of the factors which usually justify the discretionary exercise of abstention, the alternative motion to abstain is denied.