**ALLICO NATIONAL CORPORATION,** etc., and Richard Woike, Plaintiffs-Appellants,

v.

**AMALGAMATED MEAT CUTTERS AND BUTCHER WORKMEN OF NORTH AMERICA et al., Defendants-Appellees.**

**No. 16172.**

United States Court of Appeals Seventh Circuit.

April 16, 1968.

Rehearing Denied June 6, 1968.

William Robinson Fishman, Chicago, Ill., for plaintiffs-appellants Allico National Corporation, an Illinois corporation (formerly known as Gold Star Life Co. of America, Inc., an Illinois corporation) and Richard Woike; Fishman & Fishman, Chicago, Ill., of counsel.

Joseph M. Jacobs, Carl Schulz, Barnabas F. Sears, Thomas Eugene Foster, Thomas J. Boodell, Jr., Lester Asher, Chicago, Ill., Boodell, Sears, Sugrue & Crowley, Chicago, Ill., of counsel, for appellees.

Before SCHNACKENBERG, CASTLE and FAIRCHILD, Circuit Judges.

FAIRCHILD, Circuit Judge.

This action concerns securities of defendant Amalgamated Labor Life Insurance Company. Plaintiff Allico National Corporation (formerly The Gold Star Life Company of America) agreed in 1965 to buy Labor Life from defendant Amalgamated Meat Cutters and Butcher Workmen of North America, a labor union. Allico agreed to buy 400,000 shares of common stock and a $750,000 debenture note from the Union. Allico was to buy the note for $750,000 on July 1, 1966 and to give five notes for $150,000 each, payable on July 1 of each of the five succeeding years. When the contract was signed in 1963, Allico bought 25,000 shares from Labor Life for $250,000 cash. The debenture note, the 425,000 shares (all the stock outstanding), and Allico's five notes were deposited in escrow. Until default by Allico, it was to have the right to vote the stock.

After July, 1966, the Union agreed to sell all 425,000 shares and the debenture note to defendant Missouri National Life Insurance Company.

Jurisdiction, if any, is founded upon the proposition that the action is brought to enforce liabilities and duties under the securities act and the exchange act.

The amended complaint contains six counts. Counts IV, V, and VI allege the formation of the contract in 1965, the use of the mails and instrumentalities of interstate commerce, and reliance by Allico and plaintiff Woike, its president, on false representations by the Union and Labor Life. Count IV claims a violation of sec. 10(b) of the exchange act and of Rule 10–b–5; Count V of sec. 17 (a) (1), (2) and (3) of the securities act; and Count VI of sec. 12(2) of the securities act. Each count asks for judgment against the Union and Labor Life far $250,000 compensatory damages, together with punitive damages. These counts roughly approximate a claim for rescission and seek a return of the cash paid for the 25,000 shares. The district court decided it has jurisdiction of them, and they are not directly before us on this appeal.

Counts I, II, and III contain the same averments as to the formation of the 1965 contract, and allegedly false representations. In addition they contain averments, in substance, as follows:

The Union extended the time by which the debenture note must be purchased to September 15, 1966. On August 31, Allico offered to purchase it, "but the Union, having learned that notwithstanding its fraud the shares of Amalgamated Labor Life had substantially increased in value, refused to sell plaintiffs said $750,000 Note and said 400,000 shares of stock as they had agreed to do and wrongfully obtained possession of plaintiffs' 25,000 shares of stock." The Union later agreed to sell all the shares and the debenture note to Missouri National for $2,000,000, a better price by $500,000.

In each count, the plaintiffs seek the following types of relief: (1) injunction against the sale to Missouri National, (2) a decree for return of the 25,000 shares and for specific performance of the contract with Allico, and (3) compensatory damages of $1,000,000, as well as punitive damages. Count I characterizes the conduct in connection with the sale to Missouri National as a device to defraud, operating as a fraud upon plaintiffs, in violation of sec. 10(b) of the exchange act [1] and of Rule 10–b–5, and Count II terms such conduct a violation of sec. 17(a) of the securities act.[2] Count III avers that the sale is a breach of contract and will unjustly enrich defendants.

The district court concluded that Counts I, II and III amounted only to actions to enforce a contract or recover damages for breach, rather than to enforce liabilities or duties under the securities act or exchange act. He directed that judgment be entered dismissing

---

1. 15 U.S.C. sec. 78j(b).

2. 15 U.S.C. sec. 77q(a).

these counts for want of jurisdiction, and determined that there was no just reason for delay. Plaintiffs appealed.

The Union and Labor Life ask us to dismiss the appeal, arguing that it was an abuse of discretion to make the dismissal of these counts a final judgment under Rule 54(b).

■ We would not, however, dismiss the appeal in any event, because the order has the effect, in this case, of refusing a preliminary injunction, and is appealable, as such, even if interlocutory.[3] There was, moreover, no abuse of discretion in making the order a final judgment. Although the two sets of counts have some facts in common, Counts I, II, and III are predicated in large part on facts outside the scope of Counts IV, V and VI. They present distinct legal questions, seek different relief, and involve parties not concerned in Counts IV, V and VI, and there appears no probability that developments in the subsequent course of Counts IV, V and VI before the district court would compel or suggest revision of the order dismissing Counts I, II, and III.

Apparently the district court analyzed the dismissed counts as claims by plaintiffs that they had a contract to buy securities from the Union, had tendered the performance due July 1, 1966 within the period of an extension granted by the Union, and that equity should aid them by preventing the sale of the identical securities to a third party and compelling the Union to perform. Following this analysis in simplest terms, the decision would be correct.

Two averments suggest, however, that there is wrongdoing and bad faith on the part of the Union, and that this is not solely a dispute in good faith over the existence or interpretation of contractual obligations and performance thereof. One averment is that 25,000 shares were owned by plaintiffs, though pledged as security, that the Union "wrongfully obtained possession" of them, and agreed to sell them to a third party. The other is that the Union was motivated in dealing with plaintiffs' 25,000 shares and the shares and note it had promised to sell to plaintiff by its realization that the value had increased and that it could profit at plaintiffs' expense.

Two purchase and sale transactions are involved, each brought about by the use of the mails and instrumentalities of commerce. The Union's allegedly wrongful conduct quite clearly occurred "in connection with" its transaction with plaintiffs and its transaction with Missouri National. The conduct also occurred "in" the transaction with Missouri National. It is less clear, but sufficiently so, that the conduct also occurred "in" the sale transaction with plaintiffs.

Sec. 17(a) of the securities act[4] makes it "unlawful for any person in the * * * sale * * * (1) to employ any device, scheme, or artifice to defraud, or * * * (3) to engage in any transaction * * * or course of business which operates or would operate as a fraud or deceit upon the purchaser."

Sec. 10(b) of the exchange act[5] makes it unlawful for any person to use "in connection with the purchase or sale" any deceptive device in contravention of a commission rule. Rule 10-b-5 forbids employment of "any device, scheme, or artifice to defraud" and engaging in "any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person."

■ Thus our question becomes: Whether the averments of wrongfulness of the Union's conduct, if true, place such conduct sufficiently in the area of device, scheme, or artifice to defraud, and of operating as a fraud or deceit upon plaintiffs. We conclude that they do. Even if a breach of contract in order to make a more favorable contract would not in itself be sufficient, we have more

---

3. 28 U.S.C. sec. 1292(a) (1).

4. 15 U.S.C. sec. 77q(a).

5. 15 U.S.C. sec. 78j(b).

here. The motivation not only is said to induce a breach of contract to sell the 400,000 shares and the debenture note, but also to induce the conversion of plaintiffs' pledged 25,000 shares.

The second circuit considered, in A. T. Brod & Co. v. Perlow,[6] an action by a broker against its customers to recover the loss suffered by the broker when the customer refused to pay for securities the customers had ordered, but which had dropped in value. The broker alleged that the customers made it a practice to order securities with the fraudulent intent of paying for them only if the value had increased by the date payment was due.

The court concluded that the complaint sufficiently claimed a "device, scheme, or artifice to defraud" under Rule 10–b–5. The court rejected the objection that "no fraud is alleged as to the investment value of the securities nor any fraud 'usually associated with the sale or purchase of securities.'"

The court said: "Indeed, we recognize that not every failure by a customer to pay for securities ordered adds up to a violation of the securities laws. But whether there is actionable fraud or a mere breach of contract depends on the facts and circumstances developed at the trial or on motion for summary judgment."[7]

The southern district of New York found violations of Rule 10–b–5 in a course of business involving a conspiracy to convert securities.[8] Plaintiff was a purchaser of securities. He borrowed money for his purchases from First Discount Corporation and pledged the securities with defendant Trust Co. as security. It was alleged that the Trust Co., at the request of Discount, wrongfully sold the shares, causing a loss to plaintiff; that the Trust Co., Discount, and the broker through whom the shares were sold were in a conspiracy to convert the securities of plaintiff. In reaching its decision, the court relied on the view of the SEC that brokers violate Rule 10–b–5 if they convert money entrusted to them for stock purchases, or sell customers' stock and divert the proceeds to themselves.[9]

In Securities and Exchange Commission v. Lawson,[10] a broker's conversions of securities and funds of his customers were held to be a course of business which operated as a fraud or deceit upon the purchasers, in violation of section 17 (a) (3) of the securities act.

We find support for our views in the reasoning of the decisions just cited.

We conclude that the district court had jurisdiction of Counts I and II. What of Count III? All these counts contain identical averments of fact, including those which are essential to federal jurisdiction. They differ only in that Counts I and II each assert that a violation of a federal statute is involved, while Count III states plaintiff's claim in terms of restitution for unjust enrichment. Since all the factual claims are identical, it seems appropriate to hold that the district court also has jurisdiction of Count III, though it may be pure surplusage. We do not pass upon plaintiff's theory that there is pendent jurisdiction of a non-federal cause of action in Count III. It is most difficult to imagine a set of facts which would support a recovery in the context of Count III without at the same time establishing a right to recover under Counts I and II.

We are directly concerned only with jurisdiction. We do note that defendants supported their motion to dismiss with copies of documents showing that on July 19, 1966 plaintiffs acknowledged that Allico defaulted in the performance due July 1, and joined in a direction to the escrowee to deliver the entire 425,000

6. (1967), 375 F.2d 393.

7. Id. at p. 398.

8. Cooper v. North Jersey Trust Company of Ridgewood, N. J. (1964), 226 F.Supp. 972.

9. Id. at p. 978.

10. (D.C.Md.1938), 24 F.Supp. 360.

shares and debenture note to the Union. In the absence of explanation, these documents tend to show that the averments of wrongful taking by the Union and of the extension by the Union of the time for purchase of the debenture note are false. Of course these are the very averments on which we rely in determining there was jurisdiction.

Jurisdiction, however, is to be determined on the basis of the face of the complaint.[11]

The judgment of dismissal will be reversed and the cause remanded for further proceedings.

Before CASTLE, Chief Judge, SCHNACKENBERG and FAIRCHILD, Circuit Judges.

On Petition for Rehearing.

PER CURIAM.

Our attention is called to the existence of exceptions from our statement, "Jurisdiction, however, is to be determined on the basis of the face of the complaint."

We are not concerned here, however, with such facts as are required for jurisdiction based on diversity. In this case, federal court jurisdiction depends on the character of the action, i. e., is it an action to enforce liabilities and duties under the securities act or the exchange act? Taking the complaint at face value we held that it is such action.

The Supreme Court has said:

"The previously carved out exceptions are that a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous. The accuracy of calling these dismissals jurisdictional has been questioned. The Fair v. Kohler Die & Specialty Co. supra, 228 U.S. [22] at 25

[33 S.Ct. 410, 57 L.Ed. 716, 717]. But cf. Swafford v. Templeton, supra [185 U.S. 487, 22 S.Ct. 783, 46 L.Ed. 1005]."[1]

If there is room, in deciding a motion to dismiss a complaint for lack of jurisdiction over the subject matter, for a determination, on the basis of affidavits or other material outside the complaint, that the averments of fact which are essential to stating a claim under the securities act or the exchange act are so clearly false, sham or frivolous that they may be disregarded, the record before us does not provide a clear and satisfactory basis on which to make so drastic a determination.

The petition for rehearing is denied.

---

11. Bell v. Hood (1946), 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939.

